[No. A116911. First Dist., Div. Four. Dec. 19, 2008.]

THEODORE DeJUNG, Plaintiff and Appellant, v.
THE SUPERIOR COURT OF SONOMA COUNTY, Defendant and
Respondent.

**COUNSEL**

McGuinn, Hillsman & Palefsky and John A. McGuinn for Plaintiff and Appellant.

Hanson Bridgett Marcus Vlahos & Rudy, John D. Adkisson and Gail Cecchettini Whaley for Defendant and Respondent.

**OPINION**

**RUVOLO, P. J.—**

## I. INTRODUCTION

Appellant Theodore DeJung (DeJung), formerly employed as a commissioner by respondent Sonoma County Superior Court (Superior Court), brought an age discrimination case against the Superior Court under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).[1] The trial court granted the Superior Court's motion for summary judgment, finding (1) the Superior Court is protected from suit under FEHA based on the affirmative defense of discretionary immunity (§§ 815.2, subd. (b), 820.2), and (2) DeJung did not raise a triable issue of fact with regard to his age discrimination claim. On this appeal, DeJung contends that statutory immunity does not protect against direct public entity liability under FEHA, and there are triable issues of fact relating to the discrimination claim. We agree with these contentions, and reverse.

## II. FACTS AND PROCEDURAL BACKGROUND

Upon appeal following a grant of summary judgment by the trial court, "[t]he Supreme Court has described our duty as follows: 'In ruling on the motion, the court must "consider all of the evidence" and "all" of the "inferences" reasonably drawn therefrom ([Code Civ. Proc.,] § 437c,

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

subd. (c)), and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party.' (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].) 'All doubts as to whether there are any triable issues of fact are to be resolved in favor of the party opposing summary judgment. [Citation.]' (*Ingham v. Luxor Cab Co.* (2001) 93 Cal.App.4th 1045, 1049 [113 Cal.Rptr.2d 587].)

" 'Therefore, if a plaintiff in response to a defendant's summary judgment request demonstrates the existence of a triable dispute with "specific facts" ([Code Civ. Proc.,] § 437c, subd. (o)(2)) by making a prima facie showing of the merit of the complaint, the motion must be denied. There is to be no weighing of evidence. [Citations.]' (*Kids' Universe*[ *v. In2Labs* (2002)] 95 Cal.App.4th [870,] 880 [116 Cal.Rptr.2d 158].) Moreover, equally conflicting evidence requires denial of a summary judgment motion and a trial to resolve the dispute. (*Ibid.*; see also *Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 724 [110 Cal.Rptr.2d 528, 28 P.3d 249]; *Livingston v. Marie Callenders, Inc.* (1999) 72 Cal.App.4th 830, 839–840 [85 Cal.Rptr.2d 528].)" (*McIntosh v. Mills* (2004) 121 Cal.App.4th 333, 338 [17 Cal.Rptr.3d 66].)

It is with these principles in mind that we summarize the evidence presented below in a light most favorable to DeJung, both in testing the Superior Court's claim of immunity, and in determining if triable issues of fact exist regarding the merits of his claim. In fulfilling this duty, we recognize that the Superior Court introduced evidence refuting most, if not all, of the facts and inferences alleged by DeJung, including those relied on in establishing discriminatory animus. We "emphasize that our analysis is confined to evaluating inferences which *may*, but need not, be drawn from this record. It is not for us to say whether they represent the best or only inferences. Our task must end with the conclusion that they are inferences a reasonable factfinder could draw." (*Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 121 [16 Cal.Rptr.3d 717] (*Reeves*).)

DeJung was born on August 23, 1939, and was admitted to the California Bar in January 1972. In 1976, after four years of private practice in Santa Rosa, California, DeJung became a traffic referee for the Sonoma County Municipal Court (Municipal Court). In 1982, DeJung took a full-time position as a Municipal Court commissioner. DeJung remained a full-time commissioner for approximately 14 years, until 1996.

In approximately 1995, Gail Guynup (Guynup), who was then a Municipal Court judge, approached DeJung about her retiring and then splitting the full-time commissioner position with him. The presiding judge of the Municipal Court approved the time-split suggestion. From 1996 through

the spring of 2004, Guynup and DeJung split the full-time commissioner position between them, with each working alternating two-month stints. During the same time period, DeJung also filled in for judges who were absent, and would take overflow from judges with full calendars.

In December 2003, Guynup approached DeJung and told him her father had recently died and she would not work beyond April 1, 2004. DeJung then approached the presiding judge of the Superior Court,[2] Allan Hardcastle (Hardcastle), about Guynup's decision. DeJung expressed his own desire to find a replacement for Guynup and to continue splitting the full-time commissioner position. To that end, Hardcastle suggested DeJung contact Dean Beaupre, a retired Alameda County Superior Court judge, who occasionally served on assignment and as a temporary judge. Around that same time, Walter Risse (Risse), a former public defender, contacted DeJung and expressed interest in replacing Guynup as the person who split the full-time commissioner position with DeJung. DeJung indicated this was agreeable, and told Risse to contact Hardcastle about the proposal. Risse met with Hardcastle, and Hardcastle encouraged Risse to apply for the half-time commissioner position.

During the first half of January 2004, DeJung went to Hardcastle's chambers to inquire about Hardcastle's reaction to Risse. Hardcastle told DeJung that the Superior Court's executive committee (Executive Committee), which Hardcastle chaired,[3] had decided not to continue splitting the full-time commissioner position. Although surprised by Hardcastle's statement, DeJung replied that if that was the Executive Committee's preference, he would like to continue as a full-time commissioner. Hardcastle said he would discuss it with the Executive Committee.

Approximately a week later, DeJung again met with Hardcastle in Hardcastle's chambers. The meeting concerned the status of DeJung's request for the full-time commissioner position. At this meeting, Hardcastle told DeJung that "they want somebody younger, maybe in their 40's." After hearing this statement, DeJung left Hardcastle's chambers and went to the courthouse coffee shop, where he encountered Sonoma County Public Defender John Abrahams, a prosecutor named Stephan Passalacqua (now the Sonoma County District Attorney), and a local trial attorney named Andy

---

[2] By this time, the municipal and superior court systems had been consolidated statewide. (See Cal. Const., art. VI, former § 23 [eff. June 3, 1998; repealed eff. Jan. 1, 2007]; see generally *Ytuarte v. Superior Court* (2005) 129 Cal.App.4th 266, 274 [28 Cal.Rptr.3d 474].)

[3] DeJung's separate statement in opposition to the Superior Court's motion for summary judgment stated that, as the presiding judge of the Superior Court, Hardcastle also served as chair of the Executive Committee. This statement is not contested anywhere in the record, so for purposes of this appeal, we assume it to be true.

Martinez. When Martinez asked DeJung why he appeared to be distressed, he related Hardcastle's statement to the attorneys. Martinez responded, "They can't do that."

A day or two later, DeJung returned to Hardcastle's chambers to confirm that Hardcastle had told the Executive Committee about DeJung's request to return to the commissioner position full time, and that Hardcastle had later informed DeJung that the Executive Committee wanted somebody younger. Hardcastle confirmed both statements with a nod. DeJung inquired whether there had been any complaints from clerks, staff or others about DeJung's work. Hardcastle said there were two written complaints from litigants unhappy with the result of their cases. Immediately following this meeting, DeJung made handwritten notes of the substance of the conversation.

Steve Rigg (Rigg) was a 24-year veteran of the Sonoma County Sheriff's Department. From 1995 to 2003, he was a bailiff for DeJung. After learning of Guynup's decision to leave, Rigg encountered Hardcastle in Hardcastle's courtroom shortly after court adjourned. Rigg asked Hardcastle, "What's going on with Ted [DeJung]?" Hardcastle responded, "Ted's a great guy, but we're looking for someone younger."

Thereafter, the Executive Committee held a meeting at which it decided to recruit for a full-time commissioner. The Executive Committee established two panels for the recruitment process. The screening panel was comprised of Judges Knoel Owen and Laurence Sawyer, and Commissioners Dennis Beaman and Stephany Joy. The interview panel was comprised of Judges Raima Ballinger, Robert Boyd and Hardcastle.

DeJung applied for the full-time commissioner position on March 13, 2004. The screening panel, of which Hardcastle was not a member, reviewed 53 applications and selected 12 candidates for interviews. DeJung was among the 12 selected to be interviewed. The other 11 candidates selected were, at the time of their interviews, between the ages of 37 and 62.[4]

The members of the interview panel ranked their top choices after engaging in extensive discussions. None of them ranked DeJung as a top choice. Each member of the interview panel stated in declarations in support of the Superior Court's summary judgment motion that DeJung was not a top choice because of his interview performance, his reputation, and the superb quality of the other candidates. The candidates selected as the interview panel's top three choices were 62, 56, and 50 years old.

---

[4] In its papers in support of the motion for summary judgment in the trial court, the Superior Court listed the ages of the candidates interviewed as: 37, 43, 46, 49, 49, 52, 55, 56, 56, 56, 62, and 65. In fact, DeJung had not yet turned 65 at the time of his interview, as his 65th birthday was still about four months away.

At a judicial business meeting on May 7, 2004, the members of the interview panel released their ranking of the candidates to the entire Superior Court judiciary. The judges then discussed the candidates' qualifications, abilities, and experience. During the meeting, someone asked where DeJung was placed in the rankings, and Hardcastle said he had rated DeJung seventh on his list, and that DeJung's performance at the interview was "terrible." Apparently, no member of the interview panel ranked DeJung among the top six candidates.

Ultimately, a candidate named Larry Ornell (Ornell) was appointed to the commissioner position. Ornell was 43 years old at the time of his selection, and was thus the next-to-youngest of the candidates who had been selected to be interviewed, and among the six youngest of the entire candidate pool. Ornell was not ranked among the top three candidates by the interview panel. Hardcastle ranked Ornell fourth, and believed the other two interviewers did as well.[5]

On April 19, 2005, DeJung filed a complaint alleging age discrimination in hiring. On December 6, 2006, the trial court issued a 17-page ruling granting the Superior Court's motion for summary judgment, concluding that the Superior Court enjoyed discretionary immunity against suits for employment discrimination under FEHA when selecting candidates for commissioner positions, and, in the alternative, that appellant had not raised a triable issue of fact with regard to his discrimination claim. Judgment in favor of the Superior Court was entered on January 23, 2007. This timely appeal ensued.

## III. DISCUSSION

### A. Governmental Discretionary Immunity Does Not Apply to Employment Discrimination Actions Under FEHA Against Public Entities As Employers

At common law, the government was immune from suit under the doctrine of sovereign immunity, but beginning in the early 20th century, this doctrine began to be criticized as outmoded and overbroad. (See, e.g., Borchard, *Governmental Liability in Tort* (1924) 34 Yale L.J. 1; see generally 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 203, pp. 343–344.) In 1957, the Legislature authorized the California Law Revision Commission to conduct a study to determine whether the common law doctrine of sovereign

---

[5] The Superior Court submitted declarations from a number of judges stating that the reason Ornell was selected was because "several Judges who knew Mr. Ornell professionally and personally . . . could attest to his experience, wisdom, and competence." These declarants also denied that the issue of age was raised during the deliberations, or was a reason either for not selecting DeJung, or for favoring the selection of Ornell.

immunity should be abolished or revised in California. (Stats. 1957, ch. 202, pp. 4589–4591; see A Study Relating to Sovereign Immunity (Jan. 1963) 5 Cal. Law Revision Com. Rep. (1963) p. 3 (Study); Recommendations relating to Sovereign Immunity, No. 1, Tort Liability of Public Entities and Public Employees (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 803 (Recommendations).)

Before the Law Revision Commission had completed its Study and issued its Recommendations, however, the California Supreme Court decided *Muskopf v. Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457] (*Muskopf*), in which it "discarded as mistaken and unjust" the judicial doctrine of governmental immunity from tort liability. (*Id.* at p. 213.) In response to *Muskopf*, the Legislature enacted a statute suspending the effect of the decision so as to give the Legislature and the Law Revision Commission time to address the law of sovereign immunity. (Civ. Code, former § 22.3, enacted by Stats. 1961, ch. 1404, § 1, pp. 3209–3210, repealed by Stats. 1979, ch. 373, § 40, p. 1264; see Study, *supra*, at p. 515; Recommendations, *supra*, at p. 803.) In January 1963, the Law Revision Commission issued its Recommendations, upon which the Legislature relied in large part in enacting the California Tort Claims Act of 1963 (Tort Claims Act). (Stats. 1963, ch. 1681, § 1, pp. 3266–3284; see *Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 932 [101 Cal.Rptr. 568, 496 P.2d 480] [Tort Claims Act "was largely the product of" the Study].)

■ The Tort Claims Act applies to all public entities and their employees, including judges and other employees of the superior courts. (§§ 811.2, 811.4 & 811.9.) It permits private tort actions against government entities and employees where permitted by statute, but otherwise retains the general concept of immunity for government entities. (§ 815.) Section 815.2, subdivision (a) of the Tort Claims Act provides that government entities are generally liable for the acts of their employees, but section 815.2, subdivision (b) (section 815.2(b)) provides that "[e]xcept as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

Specific public employee immunities are set forth in the Tort Claims Act. (§§ 820.2–823.) One of these, the so-called discretionary act immunity, is set forth in section 820.2, as follows: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

In the present case, the Superior Court argues that the discretionary act immunity for public employees, when read together with section 815.2(b), provides the Superior Court as an entity with immunity from FEHA claims based on the discretionary acts of its judiciary in selecting appointees for commissioner positions. The parties agree that the starting point for our analysis of this issue must be the California Supreme Court's decision in *Caldwell v. Montoya* (1995) 10 Cal.4th 972 [42 Cal.Rptr.2d 842, 897 P.2d 1320] (*Caldwell*).

*Caldwell* arose out of a FEHA action brought against individual school board members who had voted to terminate the school district's superintendent. (*Caldwell, supra,* 10 Cal.4th at pp. 976–977.) The Supreme Court concluded that the discretionary act immunity granted by section 820.2 prohibits suits under FEHA against public employees or officials *as individuals* when the suit challenges a personnel action that amounts to "a basic policy decision," such as the selection or dismissal of the chief operating official of a school district. (10 Cal.4th at pp. 988–989.) Thus, the court concluded that the trial court had ruled correctly in sustaining the school board members' demurrers to the plaintiff's FEHA claims.

In support of this holding, the court reasoned that "[b]y the terms of section 820.2, [the] personal immunity [for discretionary acts] applies even against liabilities imposed by prohibitory state statutes of general application such as FEHA, unless there is a clear indication of legislative intent that immunity be withdrawn in the particular case." (*Caldwell, supra,* 10 Cal.4th at p. 989.) The court concluded that as there was no indication of a legislative intent that public employees be personally liable for decisions that violated FEHA, the individual school board members were immune from suit. (10 Cal.4th at p. 989.) The court further held the public entity for which the individual public employee defendant works cannot itself be *vicariously liable* for the employee's actions to the extent the employee is immune from suit. (*Ibid.*)

*Caldwell* expressly declined, however, to decide the question we face, which is whether a government employer *as an entity* is amenable to suit under FEHA despite the discretionary act immunity and section 815.2(b). (*Caldwell, supra,* 10 Cal.4th at p. 989, fn. 9 ["In any event, the issue of entity immunity is not before us in this case, and we do not decide it."].) However, as DeJung points out, the *Caldwell* court emphasized, in dictum, the distinction between the immunity provided for by section 820.2, which eliminates any potential vicarious liability of a public entity, and the potential for direct liability of the employer as an entity.

In footnote 9 of the *Caldwell* opinion, the Supreme Court explained that "Nothing we say here is intended to imply that because the individual board

members are immune, plaintiff's FEHA claim against [the Paramount Unified School District] *itself* is also barred. Section 815.2 does generally provide that a public entity is liable for an employee's act or omission *within the scope of employment* if the employee himself could be sued (subd. (a)), but that the entity is immune if the employee is immune (subd. (b)). We observe, however, that section 815.2 simply applies principles of *vicarious* entity liability. In subdivision (b), it establishes the premise that if the directly liable employee himself cannot be sued, the doctrine of respondeat superior should not apply against the entity. [Citation.] However, FEHA creates *direct* statutory rights, obligations, and remedies between a covered 'employer,' private or public, and those persons it considers or hires for employment. [Citations.] FEHA thus provides a basis of direct entity liability independent of the derivative liabilities addressed in section 815.2. Accordingly, any personal immunity of a public employee against a particular FEHA claim does not necessarily accrue to the benefit of the public entity itself as a covered 'employer.' [Citations.]" (*Caldwell, supra*, 10 Cal.4th at p. 989, fn. 9, original italics.)

The Supreme Court quoted from footnote 9 of *Caldwell* six months later in *Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1014–1015, footnote 12 [47 Cal.Rptr.2d 478, 906 P.2d 440] (*Farmers*), reiterating, albeit once again in dicta,[6] that FEHA " 'provides a basis of direct entity liability *independent of the derivative liabilities addressed in section 815.2.*' [Citation.]" (11 Cal.4th at pp. 1014–1015, fn. 12, original italics.) The *Farmers* court added that "[b]y 'otherwise provid[ing]' for direct entity liability, the FEHA's provisions provide a viable basis for tort liability against a public employer for coemployee or supervisorial harassment under section 815, subdivision (a), notwithstanding the scope of employment limitations for derivative liability under section 815.2, subdivision (a)." (*Ibid.*)

■ Indeed, FEHA expressly makes public employers, like private employers, directly liable for violations of that law, including age discrimination.[7] Section 12926, which defines various terms used in the FEHA statutory scheme, provides that the term " '[e]mployer' includes . . . *the state or any*

---

[6] The issue in *Farmers* was whether a county was obligated to defend or indemnify its employee, a deputy sheriff, in a suit by the employee's colleagues for sexual harassment. The court held that as a matter of law, sexual harassment is outside the scope of a public employee's employment, and therefore, under the Tort Claims Act, it does not trigger vicarious liability for the employer, or a duty to defend or indemnify the employee. (*Farmers, supra*, 11 Cal.4th at pp. 1019–1020.)

[7] The age discrimination provision of FEHA is found in section 12940, subdivision (a), which provides in pertinent part that "[i]t shall be an unlawful employment practice, unless based upon a bona fide occupational qualification . . . [¶] (a) For an employer, because of the . . . age . . . of any person, to refuse to hire or employ the person . . . , or to bar or to discharge the person from employment . . . ."

*political or civil subdivision of the state*, and cities . . . ."⁸ (§ 12926, subd. (d), italics added.) In our view, the inclusion of "the state or any political or civil subdivision of the state" within FEHA's definition of "employer" constitutes an express declaration of the Legislature's intent to subject public entities to liability for violations of FEHA, and is a "clear indication of legislative intent that immunity [under sections 820.2 and 815.2(b)] be withdrawn in the particular case." (*Caldwell, supra*, 10 Cal.4th at p. 989.)

■ Our conclusion is not only consistent with the Supreme Court's dicta in *Caldwell* and *Farmers*, but also supported by well-recognized principles of statutory construction. First, where a general statute conflicts with a specific statute the specific statute controls the general one. The referent of "general" and "specific" is subject matter, with the more specific statute trumping the general one. (*McLaughlin v. State Bd. of Education* (1999) 75 Cal.App.4th 196, 224–225 [89 Cal.Rptr.2d 295] (*McLaughlin*); see also *Tapia v. Pohlmann* (1998) 68 Cal.App.4th 1126, 1133 [81 Cal.Rptr.2d 1]; *Conservatorship of Ivey* (1986) 186 Cal.App.3d 1559, 1565 [231 Cal.Rptr. 376].) " ' "[A] special statute dealing with a particular subject constitutes an exception so as to control and take precedence over a conflicting general statute on the same subject. [Citations.] . . . [N]otwithstanding that the general provision, standing alone, would be broad enough to include the subject to which the more particular one relates." . . .' [Citation.]" (*McLaughlin, supra*, 75 Cal.App.4th at pp. 224–225; see also *Conservatorship of Ivey, supra*, 186 Cal.App.3d at p. 1565.) Thus, when there is a conflict between two statutes, and one of them "directly and narrowly addresse[s]" the subject matter, whereas the other one contains only "broad, general references" to it, the more specific statute controls. (*McLaughlin, supra*, 75 Cal.App.4th at p. 225.)

■ Accordingly, to the extent the Superior Court's argument in the present case implies the existence of a conflict between the provision of FEHA defining "employer" to include government entities (§ 12926, subd. (d)), and the general discretionary act immunity conferred by section 815.2(b), the principle discussed in *McLaughlin* requires us to select FEHA as the governing statute. Section 815.2(b) not only is clearly the more general of the two statutes, but also, as previously noted, contains an express exception for situations governed by other statutes. Therefore, even assuming arguendo that the two statutes do conflict, the specific statutes prohibiting age

---

⁸ That the inclusion of state and local government entities within the scope of FEHA's definition of "employer" was a deliberate policy choice by the Legislature is made even clearer by the full text of section 12926, subdivision (d), which reads as follows: "(d) 'Employer' includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly, *the state or any political or civil subdivision of the state*, and cities, *except as follows*: [¶] 'Employer' does *not* include a religious association or corporation not organized for private profit." (Italics added.)

discrimination by government entities acting as employers must be given primacy over the general immunity granted in the Tort Claims Act. That is, because FEHA states unequivocally that no employer, including public entities, may discriminate based on age when making employment decisions, FEHA functions as an exception to the general grant of immunity under section 815.2(b).

Furthermore, " ' "[i]t is an old and well-settled rule that when two laws upon the same subject, passed at different times, are inconsistent with each other, the last one passed must prevail." ' " (*California State Disaster Council v. Workmen's Comp. App. Bd.* (1970) 11 Cal.App.3d 1083, 1087, fn. 5 [90 Cal.Rptr. 228], quoting *People v. Kuhn* (1963) 216 Cal.App.2d 695, 700 [31 Cal.Rptr. 253]; see also *Davis v. Whidden* (1897) 117 Cal. 618, 622 [49 P. 766]; *People v. Dobbins* (1887) 73 Cal. 257, 259 [14 P. 860].) This is because we assume that when the Legislature enacts new laws, it is aware of existing related laws and intends to maintain a consistent body of rules. (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 199 [96 Cal.Rptr.2d 463, 999 P.2d 686].)

As already noted, the Tort Claims Act, including the discretionary act immunity, was enacted in 1963. (Stats. 1963, ch. 1681, p. 3266.) FEHA, including the provision in section 12926, subdivision (d), expressly including government entities among the employers prohibited from discriminating, was enacted in 1980. (Stats. 1980, ch. 992, § 4, pp. 3140, 3143–3144.) Hence, this principle of statutory construction requires the conclusion that when FEHA was enacted, the Legislature understood the scope of discretionary act immunity provided for in the Tort Claims Act, and intended to limit that immunity when it included governmental entities as "employers" under FEHA.

In the present case, in concluding that the alleged actions of the Superior Court were immune under the Tort Claims Act, the trial court reasoned that discretionary immunity was necessary in order to protect the authority of the judicial system to hire its own subordinate adjudicative staff: "This is not just the issue of employment rights, but the constitutional and statutory right of the judiciary to appoint subordinate judicial officers such as court commissioners." This theme is echoed in the Superior Court's brief on appeal: "The decision as to the appointment of a subordinate judicial officer is a decision 'expressly entrusted to the coordinate branch of government at its highest level' by the California Constitution and state statute."

It is true that California trial courts have the constitutional and statutory power to select subordinate judicial officers who will assist the courts' judges in performing their duties. (Cal. Const., art. VI, § 22 ["The

Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties."]; Gov. Code, § 71622, subd. (a) ["Each trial court may establish and may appoint any subordinate judicial officers that are deemed necessary for the performance of subordinate judicial duties . . . ."].) Certainly, that prerogative includes the discretion to determine which candidate for such a position is best suited to a court's needs at a given time. But neither the trial judge's statement of decision nor the Superior Court's brief on appeal cites any authority for the proposition that in making this determination, courts may apply invidiously discriminatory criteria upon which other employers, including other government entities, are forbidden to rely. Indeed, as already discussed, FEHA specifically provides to the contrary.

Moreover, this remarkable suggestion is inimical to the core governmental responsibility entrusted to the courts: to provide for a public justice system that is unfailingly unbiased and impartial. (See generally Cal. Stds. Jud. Admin., §§ 10.20, 10.21 [courts have duty to refrain from bias in conducting proceedings, and not to discriminate in recruiting for court-appointed positions]; Cal. Code Jud. Ethics, canon 3C [judges shall discharge administrative responsibilities without bias or prejudice; shall exercise the power of appointment impartially on the basis of merit; and shall not engage in conduct that would reasonably be perceived as bias, including bias based on age].) Given this public trust, it is unimaginable that state law could be interpreted correctly as legally empowering the Superior Court itself to discriminate in selecting subordinate judicial officers on a basis prohibited under FEHA.[9]

■ Our determination that the Superior Court has no discretionary act immunity against suits under FEHA does not end our analysis. The trial court also ruled, in the alternative, that summary judgment was warranted based on DeJung's failure to raise a triable issue of fact as to whether the Superior Court had discriminated against him on the basis of age. Accordingly, we must examine that issue as well.

---

[9] At oral argument, the Superior Court relied on the slip opinion filed in the federal district court case of *Lew v. Superior Court* (N.D.Cal., Mar. 17, 2008, No. C 06-03098 CRB) 2008 WL 728895. Although unpublished federal cases may be cited as persuasive, they are not precedent. (*Pacific Shore Funding v. Lozo* (2006) 138 Cal.App.4th 1342, 1351–1353 & fn. 6 [42 Cal.Rptr.3d 283].) In any case, we conclude that Judge Charles Breyer's opinion is not helpful, particularly because the issue of governmental immunity was not discussed as to the plaintiff's FEHA claims for discrimination and retaliation, which were disposed of on their merits. (2008 WL 728895, pp. *6–*9.) As to the court's discussion of governmental immunity relative to Lew's independent cause of action for wrongful termination in violation of public policy (2008 WL 728895, pp. *11–*12), we find it to be inapposite to DeJung's claim under FEHA, and otherwise unpersuasive.

### B. Triable Issues of Material Fact Precluded Summary Judgment

The rules governing summary judgment are well established. "A motion for summary judgment shall be granted when 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' . . ." (*Hinesley v. Oakshade Town Center* (2005) 135 Cal.App.4th 289, 294 [37 Cal.Rptr.3d 364] (*Hinesley*), quoting Code Civ. Proc., § 437c, subd. (c).) As the moving party in the trial court, the Superior Court had "the burden of persuasion that there is no triable issue of material fact and that [it was] entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850, fn. omitted.) A moving defendant is entitled to judgment as a matter of law when the defendant shows without rebuttal that one or more elements of the plaintiff's case cannot be established or that there is a complete defense to the plaintiff's causes of action. (*Hinesley, supra,* 135 Cal.App.4th at p. 294, citing *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 356 [100 Cal.Rptr.2d 352, 8 P.3d 1089] (*Guz*).)

"On appeal after a summary judgment has been granted, we review de novo the trial court's decision to grant summary judgment and are not bound by the trial court's stated reasons. [Citations.] In reviewing the summary judgment, we apply the same three-step analysis used by the trial court: we (1) identify the issues framed by the pleadings; (2) determine whether the moving party has negated the opponent's claims; and (3) determine whether the opposition has demonstrated the existence of a triable, material factual issue. [Citation.] Like the trial court, we view the evidence in the light most favorable to the opposing party and accept all inferences reasonably drawn therefrom. [Citation.]" (*Hinesley, supra,* 135 Cal.App.4th at p. 294.)

 In employment discrimination cases under FEHA, plaintiffs can prove their cases in either of two ways: by direct or by circumstantial evidence. (*Guz, supra,* 24 Cal.4th at p. 354.) When a plaintiff proffers circumstantial evidence, California courts apply the three-stage burden-shifting test established by the United States Supreme Court for trying claims of employment discrimination, including age discrimination, based on a theory of disparate treatment.[10] (*Guz,* at p. 354, citing *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [36 L.Ed.2d 668, 93 S.Ct. 1817] (*McDonnell Douglas*).)

---

[10] "Disparate treatment" is intentional discrimination on prohibited grounds. Prohibited discrimination may also be found on a theory of "disparate impact," i.e., that regardless of motive, a facially neutral employer practice or policy, bearing no manifest relationship to job requirements, in fact had a disproportionate adverse effect on members of the protected class. (See generally *Guz, supra,* 24 Cal.4th at p. 354, fn. 20.) Here, DeJung's FEHA claim is based solely on allegations of disparate treatment.

■ However, California has also adopted the rule that " 'the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination.' " (*Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1144 [29 Cal.Rptr.3d 144] (*Trop*), quoting *Trans World Airlines, Inc. v. Thurston* (1985) 469 U.S. 111, 121 [83 L.Ed.2d 523, 105 S.Ct. 613] (*Trans World*).) The *Trans World* court reasoned that "[t]he shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the 'plaintiff [has] his day in court *despite* the unavailability of direct evidence.' [Citation.]" (*Trans World, supra*, 469 U.S. at p. 121, italics added.) Thus, there is no need to engage in this burden-shifting analysis where there is direct evidence of discriminatory animus. (*Trop, supra*, 129 Cal.App.4th at pp. 1144–1145.)

Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption. Comments demonstrating discriminatory animus may be found to be direct evidence if there is evidence of a causal relationship between the comments and the adverse job action at issue. (*Trop, supra*, 129 Cal.App.4th at pp. 1146–1149.) In the present case, if a jury believed that Hardcastle made the comments attributed to him by DeJung and Rigg, Hardcastle's statements would plainly qualify as direct evidence of discriminatory animus.

In particular, after DeJung informed Hardcastle that he would like to return to a full-time commissioner position, Hardcastle stated he would discuss it with the Executive Committee. When DeJung inquired a week later about the status of the committee's decision, Hardcastle, who chaired the committee, told him that "*they* want somebody younger, maybe in their 40's." (Italics added.) A few days later, when DeJung asked Hardcastle if he was sure the Executive Committee's stance was to look for somebody younger, Hardcastle reiterated the position. In addition, in early 2004, when Rigg knew the court was considering DeJung for the commissioner position, he asked Hardcastle, "What's going on with Ted?" Hardcastle replied, "Ted's a great guy but we're looking for someone younger."[11]

Of course, proof of discriminatory animus does not end the analysis of a discrimination claim. There must also be evidence of a causal relationship between the animus and the adverse employment action—that is, in the present case, between the comments attributed to Hardcastle and the Superior Court's decision not to appoint DeJung to the commissioner position. (*Trop, supra*, 129 Cal.App.4th at pp. 1146–1149.) The Superior Court asserts that Hardcastle's comments, if made, did not taint its decisionmaking process

---

[11] Hardcastle denies making these statements, but of course, for the purposes of reviewing an order granting summary judgment, we must assume that he did. (*Hinesley, supra*, 135 Cal.App.4th at p. 294.)

because the hiring decision involved a multilevel process conducted by multiple individuals. Thus, the Superior Court's position is that at best, DeJung has produced only evidence of a "stray . . . remark[]" by one of the participants in that decision. (See *Gibbs v. Consolidated Services* (2003) 111 Cal.App.4th 794, 799–801 [4 Cal.Rptr.3d 187].)

Under the established case law, however, DeJung need not demonstrate that every individual who participated in the failure to hire him shared discriminatory animus in order to defeat a summary judgment motion. " ' "[A]n individual employment decision should not be treated as a . . . [']watertight compartment, with discriminatory statements in the course of one decision somehow sealed off from . . . every other decision. . . .['] " ' [Citation.]" (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 74 [105 Cal.Rptr.2d 652] (*Morgan*); see also *Clark v. Claremont University Center* (1992) 6 Cal.App.4th 639, 667 [8 Cal.Rptr.2d 151] (*Clark*); *Roebuck v. Drexel University* (3d Cir. 1988) 852 F.2d 715, 734, fn. 32 (*Roebuck*).) Thus, showing that a significant participant in an employment decision exhibited discriminatory animus is enough to raise an inference that the employment decision itself was discriminatory, even absent evidence that others in the process harbored such animus.

This legal principle has been colorfully referred to as the "cat's paw" doctrine. It apparently originated in *Shager v. Upjohn Co.* (7th Cir. 1990) 913 F.2d 398 (*Shager*), an employment case cited with approval by the United States Supreme Court in *Burlington Industries, Inc. v. Ellerth* (1998) 524 U.S. 742, 762 [141 L.Ed.2d 633, 118 S.Ct. 2257], declined to follow on another point on state law grounds by *State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026 [6 Cal.Rptr.3d 441, 79 P.3d 556]. (See *Reeves, supra*, 121 Cal.App.4th at p. 114.)[12] In *Shager*, the decision to terminate the plaintiff's employment was made by a committee. The defendant employer sought summary judgment, arguing that the evidence showed that at most only one member of the committee, the plaintiff's supervisor, harbored any discriminatory animus. The employee countered that a trier of fact could reasonably infer that the committee's decision was tainted by the supervisor's participation. The Seventh Circuit agreed, reasoning that if the committee "acted as the conduit of [the supervisor]'s prejudice—his cat's paw—the innocence of its members would not spare the company from liability." (*Shager, supra*, 913 F.2d at p. 405.)

All but one of the federal circuits have adopted the "cat's paw" principle, as have the California courts. (See *Reeves, supra*, 121 Cal.App.4th at

---

[12] For a fuller explication of the historic roots of this metaphor, we refer the reader to our erudite colleagues in the Sixth District. (*Reeves, supra*, 121 Cal.App.4th at pp. 114–115, fn. 14.)

pp. 114–116.) The principle has been applied, for example, in suits against educational institutions by faculty members who have been denied tenure. (See, e.g., *Morgan, supra,* 88 Cal.App.4th 52; *Clark, supra,* 6 Cal.App.4th 639; *Roebuck, supra,* 852 F.2d 715.) In discussing these cases, the *Morgan* court stated that "[i]n the context of the academic tenure system, in which decisions and recommendations made in earlier levels of review may be available to decision makers at subsequent levels, it clearly makes sense to acknowledge that the final decision may be influenced by the discriminatory intent of individuals playing a role at any point in the decisionmaking process." (*Morgan, supra,* 88 Cal.App.4th at p. 74.)

In the present case, it can hardly be argued that Hardcastle, as the presiding judge and the chair of the Executive Committee, was not a direct and important participant in the Superior Court's decisionmaking process when it decided not to retain DeJung in the full-time commissioner position. In addition, the evidence supports an inference that Hardcastle was speaking at least for the Executive Committee when he said that "they," and for himself and the Executive Committee when he said later that "we," were "looking for someone younger" than DeJung. Moreover, as in the academic tenure cases, the decisionmaking process in this case involved multiple levels where the information acquired at the first level was available to later levels. In fact, Hardcastle was personally involved at three pertinent levels: the Executive Committee, the interview panel, and in the final decision made by the full court at the judicial business meeting on May 7, 2004. Given these facts, it would be entirely reasonable for a trier of fact to infer that Hardcastle's discriminatory animus influenced the process. Accordingly, the trial court erred in granting summary judgment on the ground that there was no triable issue of fact as to whether age discrimination played a part in the Superior Court's decision not to appoint DeJung.

DeJung also argues that even if he did not provide direct evidence that the Superior Court's failure to rehire him was based on discriminatory motives, summary judgment was improperly granted because he raised triable material issues of fact on the issue of pretext. Under the three-part test established in *McDonnell Douglas, supra,* 411 U.S. 792, " '(1) The complainant must establish a prima facie case of discrimination; (2) the employer must offer a legitimate reason for his actions; (3) the complainant must prove that this reason was a pretext to mask an illegal motive.' [Citation.]" (*Morgan, supra,* 88 Cal.App.4th at p. 68; see *Clark, supra,* 6 Cal.App.4th at p. 662.) "This so-called *McDonnell Douglas* test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained." (*Guz, supra,* 24 Cal.4th at p. 354.)

Where a prima facie case is made relying on circumstantial evidence, the burden shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to raise a genuine issue of fact and to justify a judgment for the employer, that its action was taken for a legitimate, nondiscriminatory reason. (*Guz, supra*, 24 Cal.4th at pp. 355–356.) If the employer produces substantial evidence of a legitimate, nondiscriminatory reason for the adverse employment action, the presumption of discrimination created by the prima facie case " ' "simply drops out of the picture" ' [citation] and the burden shifts back to the employee to prove intentional discrimination. [Citations.]" (*Morgan, supra*, 88 Cal.App.4th at p. 68.)

▮ If the employer has met its burden by showing a legitimate reason for its conduct, the employee must demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory animus, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action. (*Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1038–1039 [128 Cal.Rptr.2d 660]; *Guz, supra*, 24 Cal.4th at p. 357; *Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1004 [67 Cal.Rptr.2d 483].)

" '[T]he plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." ' [Citation.]" (*Morgan, supra*, 88 Cal.App.4th at pp. 68–69; see *Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 256 [67 L.Ed.2d 207, 101 S.Ct. 1089].) "With direct evidence of pretext, ' "a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." [Citation.] The plaintiff is required to produce "very little" direct evidence of the employer's discriminatory intent to move past summary judgment.' . . ." (*Morgan, supra*, 88 Cal.App.4th at p. 69; see *Chuang v. University of California Davis* (9th Cir. 2000) 225 F.3d 1115, 1128.)

In this case, the trial court assumed, as we do, that DeJung presented a prima facie showing of discrimination. We also accept the trial court's conclusion that the Superior Court rebutted the prima facie case by producing evidence of legitimate, nondiscriminatory reasons for the adverse employment action. With regard to the third step, however, we disagree with the trial court's conclusion that DeJung failed to produce evidence that the proffered nondiscriminatory reasons for not hiring him were pretextual. In fact, DeJung presented ample evidence, both direct and circumstantial, that the allegedly legitimate reasons were pretextual.

First, the same evidence can be used both to set forth a prima facie case of discrimination, and to demonstrate the existence of a triable issue of fact on the issue of pretext. (*Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1101 [38 Cal.Rptr.3d 240].) Thus, in determining whether the Superior Court's proffered reasons were valid, the trier of fact could properly take into account Hardcastle's statements that "they want somebody younger, maybe in their 40's."

The trier of fact would also be entitled to consider that in all of DeJung's years of service as a commissioner, only two complaints about his performance had been received, both of which originated with disgruntled litigants. This evidence would entitle a reasonable trier of fact to infer that by any objective standard, DeJung's background and experience should have placed him among the top candidates for the position. In addition, the record reflects that the top three candidates after the interview process, like DeJung, were 62, 56, and 50 years old. Nevertheless, rather than hiring DeJung or any of these three candidates, the Superior Court chose the 43-year-old Ornell, the candidate apparently ranked fourth by the interview panel.[13] While there very well may be evidence adduced at trial to explain this decision, it is adequate for purposes of our review of a summary judgment motion to observe that this fact too supports an inference of pretext, and is consistent with Hardcastle's comment quoted in the preceding paragraph.

In short, the evidence establishes the existence of a triable issue of fact regarding the Superior Court's motivation for not hiring DeJung. It also raises an issue of fact regarding whether the court's proffered explanation that Ornell was best qualified for the position was pretextual. Accordingly, the trial court erred in concluding that the Superior Court was entitled to summary judgment on the alternative basis that DeJung had not raised a triable issue of fact regarding his age discrimination claim.[14]

---

[13] The Superior Court does not argue that its selection of a person over 40 years old to fill the position negates DeJung's age discrimination claim. Such an argument would not be meritorious. (See *Begnal v. Canfield & Assocs.* (2000) 78 Cal.App.4th 66 [92 Cal.Rptr.2d 611] [fact that age discrimination plaintiff was replaced by older person after plaintiff was terminated did not entitle employer to judgment notwithstanding jury's verdict in plaintiff's favor].)

[14] Our review of the record convinces us that summary judgment could not properly have been granted even if the Superior Court's reply declarations and consolidated separate statement were taken into account. Accordingly, we need not reach the issue whether the trial court erred in striking them.

## IV. DISPOSITION

The judgment is reversed, and the case is remanded for further proceedings consistent with the views expressed in this opinion. DeJung is awarded his costs on appeal.[15]

Reardon, J., and Sepulveda, J., concurred.

---

[15] At oral argument, counsel for DeJung requested that, in the event we reverse and remand, we order the matter assigned to another trial judge. We deny the request as not supported by a showing that the interests of justice would best be served by such an order. (Code Civ. Proc., § 170.1, subd. (c).)