[No. B178694. Second Dist., Div. Three. Apr. 27, 2006.]

PACIFIC SHORE FUNDING, Plaintiff, Cross-defendant and Respondent, v. ZORAN LOZO et al., Defendants, Cross-complainants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

[*]Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 4 of the Discussion.

1344

---

---

COUNSEL

Knapp, Petersen & Clarke and Stephen M. Harris for Defendants, Cross-complainants and Appellants.

Barbara Jones, Jean Constantine-Davis, Nina Simon and Michael Schuster for AARP Foundation Litigation as Amicus Curiae on behalf of Defendants, Cross-complainants and Appellants.

Bill Lockyer, Attorney General, Richard M. Frank, and Tom Greene, Chief Assistant Attorneys General, Albert Norman Shelden, Assistant Attorney General, Ronald A. Reiter and Benjamin G. Diehl, Deputy Attorneys General, as Amici Curiae on behalf of Defendants, Cross-complainants and Appellants.

Morrison & Foerster, H. Mark Mersel and Eric D. Olson for Plaintiff, Cross-defendant and Respondent.

Severson & Werson and Jan T. Chilton for California Financial Services Association as Amici Curiae on behalf of Plaintiff, Cross-defendant and Respondent.

---

OPINION

ALDRICH, J.—

## INTRODUCTION

A year after refinancing a loan they had obtained from Pacific Shore Funding, Zoran and Monika Lozo attempted to rescind the original loan transaction on the ground Pacific Shore had violated various disclosure requirements of the Truth in Lending Act (TILA) (15 U.S.C. § 1601 et seq., as

amended by the Home Ownership and Equity Protection Act of 1994 (HOEPA), 15 U.S.C. §§ 1602(aa) & 1639). The trial court granted Pacific Shore's summary judgment motion following *King v. State of Cal.* (9th Cir. 1986) 784 F.2d 910, cert. den. *sub nom. King v. California* (1987) 484 U.S. 802 [98 L.Ed.2d 11, 108 S.Ct. 47], rehg. den. 484 U.S. 971 [98 L.Ed.2d 412, 108 S.Ct. 412] (*King*), ruling that once having refinanced their first loan, the Lozos had nothing left to rescind.

■ In the published portion of this opinion, we decline to follow *King*, and are instead persuaded by the reasoning of myriad federal courts from other circuits. We hold that borrowers are not precluded from rescinding a consumer credit transaction that is secured by their residence and subject to TILA merely because they have already refinanced that loan.

In the unpublished portion, we hold that the trial court erred in granting summary judgment of the Lozos' claim under the Unfair Business Practices Act (Bus. & Prof. Code, § 17200, the UCL) because a lender's violation of TILA can be an unfair business practice or act under the UCL. Accordingly, the judgment is reversed.

## FACTUAL AND PROCEDURAL SYNOPSIS

### 1. *The loan and the refinance.*

The facts are undisputed. On August 7, 2000, defendants and cross-complainants, the Lozos, obtained a nonpurchase money mortgage in the amount of $28,000 secured by a deed of trust against their home. The lender was plaintiff and cross-defendant Pacific Shore, a residential mortgage lender. The loan carried an interest rate of 13.375 percent. Pacific Shore charged, among other things, origination, funding, processing, and settlement fees in excess of $2,800, which amounted to more than 10 percent of the principal amount of the loan. Because the points and fees charged by Pacific Shore exceeded 8 percent of the total loan amount, it was considered a high cost loan and thus subject to the disclosure requirements of TILA. (15 U.S.C. §§ 1602(aa), 1635(a), 1639(a) & (b); 12 C.F.R. § 226.32(a)(1) (2006).)

In June 2002, the Lozos obtained a second loan from Pacific Shore in the amount of $71,600, which was used, among other things, to pay off the full outstanding balance of the first loan. The Lozos were also charged a prepayment penalty.

In April 2003, the Lozos attempted to rescind the first loan by notifying Pacific Shore. Pacific Shore rejected the demand.

2. *The lawsuit and summary judgment motion.*

Pacific Shore filed its complaint against the Lozos seeking a judicial declaration that the August 2000 loan agreement was valid and binding according to its terms, and the Lozos were not entitled to rescind it.

The Lozos responded with a cross-complaint asserting that the first loan was subject to the disclosure requirements of TILA and Federal Reserve Board Regulation Z implementing it (12 C.F.R. § 226.1 (2006)). Under TILA, the Lozos alleged that Pacific Shore had failed to properly and timely provide mandated disclosures and had rejected their attempt to rescind the first loan agreement.

Pacific Shore moved for summary judgment on the grounds, there being no dispute of fact, that based on long-standing authority in *King, supra,* 784 F.2d 910, the Lozos' repayment of the first loan terminated any rights they may have had to rescind it under TILA.

The Lozos opposed the summary judgment motion by arguing that *King* was improperly decided and not binding. They enumerated the specific TILA omissions: (1) The notice of the right to rescind did not include the date of the transaction or the deadline by which the notice of rescission must be sent (15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b) (2006))[1]; and (2) Pacific Shore failed to provide, at least three business days before the execution of the first loan's documents, two copies of the consumer disclosures of the (a) interest rate, (b) monthly payments, (c) borrowers' right not to complete the transaction, along with notices that (d) the borrowers risked losing their home if they did not meet their loan obligations. (15 U.S.C. § 1639(a)(1) & (2).)

The trial court granted Pacific Shore's summary judgment motion. In so doing, the court determined that "[i]t is undisputed that the loan . . . in this case had been refinanced in full prior to the time that the Lozos sought to exercise a right of rescission of that loan under the Truth in Lending Act. In *King* . . . the court held that a loan which had been refinanced could not be rescinded under the federal Truth in Lending Act . . . because 'there is nothing to rescind.' " The Lozos appeal.

## DISCUSSION

1. *Standard of review.*

Summary judgment is granted when a moving party establishes the absence of a triable issue of material fact and the right to entry of judgment as a

---

[1] Regulation Z specifies the form and contents of the notice of the right to rescind and requires, among other things, that the notice include the *"date the rescission period expires."* (12 C.F.R. § 226.23(b)(1)(v) (2006), italics added.)

matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].) " ' " 'We review the [superior] court's decision to grant . . . summary judgment de novo.' [Citation.]" [Citation.]' [Citation.] There being no dispute as to the operative facts here, the question is purely a legal one for us to resolve. [Citation.]" (*Nathanson v. Hecker* (2002) 99 Cal.App.4th 1158, 1162 [121 Cal.Rptr.2d 773].)

### 2. *TILA, HOEPA, and Regulation Z.*

■ Congress enacted TILA in 1968 "to protect consumers' choice through full disclosure and to guard against the divergent and at times fraudulent practices stemming from uninformed use of credit. [Citations.]" (*King, supra*, 784 F.2d at p. 915.) The stated congressional purpose behind TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." (15 U.S.C. § 1601(a); see also 12 C.F.R. § 226.1(b) (2006).)

■ HOEPA amends TILA to "ensure that consumers understand the terms of such loans and are protected from high pressure sales tactics . . . . [The amendment] also prohibits High Cost Mortgages from including certain terms such as prepayment penalties and balloon payments that have proven particularly problematic." (Sen.Rep. No. 103-169, 2d Sess., p. 21 (1994), reprinted in 1994 U.S. Code Cong. & Admin. News, p. 1905.)[2]

Toward this end, TILA requires that specific disclosures be provided to borrowers of qualifying consumer credit transactions that are secured by the borrowers' residence. Section 1635 of title 15 of the United States Code mandates that lenders clearly and conspicuously disclose to borrowers that borrowers have a right to rescind the transaction until midnight of the third business day following consummation of the transaction. (15 U.S.C. § 1635(a)[3]; 12 C.F.R. § 226.23(b) (2006).) HOEPA further directs lenders to

---

[2] A loan qualifies for HOEPA protection if it is "a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan, if—[¶] (A) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities . . . or [¶] (B) the total points and fees payable by the consumer at or before closing will exceed the greater of—[¶] (i) 8 percent of the total loan amount; or [¶] (ii) $400." (15 U.S.C. § 1602(aa)(1).)

[3] Title 15 United States Code section 1635(a) states in pertinent part: "Disclosure of obligor's right to rescind [¶] Except as otherwise provided in this section, in the case of [an applicable] consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to

disclose: that borrowers are not required to complete the loan agreement merely because they have received disclosures or signed the loan application; that they could lose their home if they do not meet their loan obligations; and the percentage rate, the amount of monthly payments, and in the case of adjustable rate loans, that the interest rate and payment could increase. (15 U.S.C. § 1639(a)(1) & (a)(2).)[4] Such disclosures must be made "not less than 3 business days prior to consummation of the transaction." (15 U.S.C. § 1639(b)(1).)

■ The remedies under TILA include civil liability and damages. If any required disclosures are not given, the borrower's right to rescind is extended from three days to *three years after the date of consummation of the transaction.* (15 U.S.C. § 1635(a) & (f); 12 C.F.R. § 226.23(a)(3) (2006).) Thus, "a single violation of TILA, whether it be substantive or technical, extends a borrower's period for rescission. [Citations.]" *(Wiggins v. Avco Financial Services* (D.D.C. 1999) 62 F.Supp.2d 90, 94; see *Semar v. Platte Valley Federal S & L Ass'n* (9th Cir. 1986) 791 F.2d 699, 704 [minor technical, as well as major, violations of TILA or Regulation Z entitle the borrower to rescind].) Lenders who fail to notify the borrower correctly of the right to rescind are also liable to the borrower for damages plus costs and attorney fees. (15 U.S.C. § 1640(a)(1), (a)(2)(A) & (a)(3).) Lenders who omit the disclosures under title 15 United States Code section 1639 are subject to

whom credit is extended, *the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later* . . . . The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. . . ." (Italics added.)

[4] Title 15 United States Code section 1639 states in pertinent part:

"(1) Specific disclosures

"In addition to other disclosures required under this subchapter [which includes section 1635], for each [qualifying] mortgage . . . the creditor shall provide the following disclosures in conspicuous type size:

"(A) 'You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application.'

"(B) 'If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.'

"(2) Annual percentage rate

"In addition to the disclosures required under paragraph (1), the creditor shall disclose—

"(A) in the case of a credit transaction with a fixed rate of interest, the annual percentage rate and the amount of the regular monthly payment; or

"(B) in the case of any other credit transaction, the annual percentage rate of the loan, the amount of the regular monthly payment, a statement that the interest rate and monthly payment may increase, and the amount of the maximum monthly payment, based on the maximum interest rate allowed . . . ."

liability in the amount equal to the sum of all finance charges and fees paid by the consumer, unless the failure to comply with the statute is not material. (15 U.S.C. § 1640(a)(4).)

As a consumer protection statute, TILA "is to be liberally construed in favor of borrowers." (*Wiggins v. Avco Financial Services, supra,* 62 F.Supp.2d at p. 94; see *Riggs v. Government Emp. Financial Corp.* (9th Cir. 1980) 623 F.2d 68, 71.)

> 3. *Summary judgment of the Lozos' TILA cause of action was improperly granted.*
>
> a. *Under the undisputed facts, the Lozos were entitled to rescind.*

As framed by the pleadings and demonstrated in the motion for summary judgment, the Lozos claim that Pacific Shore violated TILA and Regulation Z by failing to deliver to them two copies of the notice of the right to rescind with the date of the loan and the deadline for rescission (15 U.S.C. § 1635; 12 C.F.R. § 226.23(b)(1) & (c) (2006)), and by omitting to make the title 15 United States Code section 1639 disclosures at least three business days prior to consummation of the first loan transaction. (15 U.S.C. § 1639(a) & (b).)[5] Hence, the Lozos argue, they had a continuing right to rescind the transaction for three years or by August 2003 (15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3)) and so their June 2003 notice of rescission was timely.

While it appears that Pacific Shore did provide certain disclosures, in moving for summary judgment, it *did not dispute that the disclosures were not made in advance of the date the loan closed and the rescission notice was not filled out properly, as it lacked crucial terms.* Thus, there is no dispute that Pacific Shore violated certain of TILA's disclosure mandates.

In ruling as a matter of law that the Lozos had no right to rescind the first loan, the trial court relied on *King, supra,* 784 F.2d at pages 912 to 913. There, the borrower entered into two relevant transactions, the latter of which was a refinance that superseded an earlier loan. After filing for bankruptcy

---

[5] The Lozos contend that Pacific Shore also violated TILA's ban on prepayment penalties. They contend, even if their complaint did not sufficiently raise this violation, that they requested trial court leave to amend their complaint, which request the court should have granted. Observing that the issues to be resolved on summary judgment are framed by the pleadings, and that the Lozos' cross-complaint did not raise violation of the prepayment penalty prohibition, Pacific Shore counters that any violation of the prepayment penalty ban is not cognizable in this proceeding, and in any event, Pacific Shore did not violate TILA's prepayment penalty provision. We need not address the prepayment penalty prohibition here because the Lozos have adequately alleged at least one other violation of TILA that entitled them to rescission. (See *Wiggins v. Avco Financial Services, supra,* 62 F.Supp.2d at p. 94.)

protection, the borrower attempted to rescind the earlier loan under title 15 of the United States Code, section 1635. On behalf of herself and a class, the borrower then sued the loan broker and lenders alleging violations of various TILA disclosure requirements. (*King, supra,* at p. 912.) In affirming the district court's dismissal of the action, the Ninth Circuit stated in full: "The loan of March 1981 cannot be rescinded, because there is nothing to rescind. King refinanced that loan in November 1981, and the deed of trust underlying the March 1981 loan has been superseded." (*Id.* at p. 913.)

We respectfully decline to follow *King.* "Decisions of lower federal courts interpreting federal law are not binding on state courts. [Citation.]" (*People v. Williams* (1997) 16 Cal.4th 153, 190, 66 Cal.Rptr.2d 123, 940 P.2d 710[declining to following Ninth Circuit decision].) "[E]ven on federal questions, [the decisions of the lower federal courts] are persuasive and entitled to great weight." (*Etcheverry v. Tri-Ag Service, Inc.* (2000) 22 Cal.4th 316, 320 [93 Cal.Rptr.2d 36, 993 P.2d 366].) However, "[w]here lower federal precedents are divided or lacking, state courts must necessarily make an independent determination of federal law [citations]." (*Id.* at p. 321.) We may independently resolve the question before us because federal courts are split on the question of whether, under TILA, a borrower has a right to rescind a qualifying loan after it has been paid off.

Some courts follow *King.* (See, e.g., *Coleman v. Equicredit Corp. of America* (N.D.Ill., Jan. 22, 2002, No. 01 C 2130) 2002 WL 88750 at p. *2 [following *King*];[6] *Jenkins v. Mercantile Mortg. Co.* (N.D.Ill. 2002) 231 F.Supp.2d 737, 746 [following *King*].)

However, most courts have not followed *King.* (See, e.g., *Barrett v. JP Morgan Chase Bank, N.A.* (6th Cir. 2006) 445 F.3d 874, 880–881) [declining to follow *King*]; *Duren v. First Government Mortg. and Investors Corp.* (D.C. Cir., June 7, 2000, No. 99-7026) 2000 WL 816042 at p. *2 [declining to follow *King*]; *Payton v. New Century Mortg. Corp.* (N.D.Ill., Oct. 14, 2003, No. 03 C 333) 2003 WL 22349118 at p. *2 [declining to follow *King*]; *McIntosh v. Irwin Union Bank and Trust, Co., supra,* 215 F.R.D. at pp. 30–31 [declining to follow *King*]; *Pulphus v. Sullivan* (N.D.Ill., Apr. 28, 2003, No. 02 C 5794) 2003 WL 1964333 at p. *17

---

[6] We recognize that numerous federal opinions addressing the holding of *King* are unpublished. However, they are "citable notwithstanding California Rules of Court, rule 977, which only bars citation of unpublished *California* opinions. Therefore, [these cases are] citable as persuasive, although not precedential, authority. [Citation.]" (*City of Hawthorne ex rel. Wohlner v. H&C Disposal Co.* (2003) 109 Cal.App.4th 1668, 1678, fn. 5 [1 Cal.Rptr.3d 312]; see also *McIntosh v. Irwin Union Bank and Trust, Co.* (D.Mass. 2003) 215 F.R.D. 26, 30–31, fn. 1 [citing federal authority for the propriety of citing unpublished federal opinions]; but see U.S. Cir. Ct. Rules (9th Cir.), rule 36-3(a) & (b) [unpublished dispositions of Ninth Circuit are nonbinding and not citable].)

[declining to follow *King*]; *In re Wright* (Bankr. E.D.Pa. 1991) 127 B.R. 766, 770–771 [declining to follow *King*]; see *Mayfield v. Vanguard Sav. & Loan Ass'n.* (E.D.Pa. 1989) 710 F.Supp. 143, 145–146 [holding contrary to *King*]; *Abele v. Mid-Penn Consumer Discount* (Bankr. E.D.Pa. 1987) 77 B.R. 460, 467 [holding contrary to *King*], affd. *Abele v. Mid-Penn Consumer Discount* (3d. Cir. 1988) 845 F.2d 1009.)

■ For two reasons, we decline to follow *King* and are instead persuaded by the majority of cases that have convincingly held that rescission is available notwithstanding that the loan the borrower seeks to rescind has already been refinanced. First, apart from the conspicuous lack of analysis in *King* providing us with little basis for its position, its conclusion is not supported by the language of TILA and Regulation Z. According to Regulation Z, "[i]f the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, [1] upon transfer of all of the consumer's interest in the property, or [2] upon sale of the property, whichever occurs first." (12 C.F.R. § 226.23(a)(3) (2006); see also 15 U.S.C. 1635(f).)[7] Absent from that list is payment of the loan. There is no statutory authority for concluding that a refinance terminates the consumer's right to rescind the original loan. (*Ibid.*) As noted by one court, "[t]he fact that the regulations set forth an enumerated list of events that cut off rescission rights—and do not include the payment in full of the loan as one of those events—speaks against [the lender's] argument." (*McIntosh v. Irwin Union Bank and Trust, Co., supra,* 215 F.R.D. at p. 31.) Because TILA is to be construed liberally to effect its remedial purpose of protecting consumers who are inherently at a disadvantage in loan and credit transactions by assuring that they will not be easily misled about the costs of financing (*Semar v. Platte Valley Federal S & L Ass'n, supra,* 791 F.2d at p. 705; *Wiggins v. Avco Financial Services, supra,* 62 F.Supp.2d at p. 94, citing *Thomka v. A.Z. Chevrolet, Inc.* (3d Cir. 1980) 619 F.2d 246, 248), we are adverse to reading into the statute an implicit basis for terminating consumers' remedies that would only benefit lenders at the expense of borrowers.

■ Second, *King* is really distinguishable. Title to the borrower's residence in *King* remained vested in the bankruptcy trustee (*King, supra,* 784 F.2d at p. 912), whereas here, the Lozos continue to hold title. Were we to follow *King* we would be overlooking the fact that something does remain

---

[7] Regulation Z lists as transactions that are exempt from rescission rights, the "*refinancing* or consolidation by the same creditor *of an extension of credit* already secured by the consumer's principal dwelling," but states that the right to rescission nonetheless "shall apply . . . to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and [the] amounts attributed solely to the costs of the refinancing or consolidation." (12 C.F.R. § 226.23(f)(2) (2006), italics added.) Although some refinancing loans may not be rescindable, this provision does not prevent the original loan from being rescinded, despite its refinancing.

to be rescinded in this case. Under TILA, rescission "does not mean an annulment that is definitively accomplished by unilateral pronouncement, but rather a remedy that restores the *status quo ante*. [Citation.]" (*Quenzer v. Advanta Mortg. Corp. USA* (D.Kan. 2003) 288 B.R. 884, 888.) Once borrowers exercise their right to rescind under TILA, their liability for the loan ceases and any security interest given becomes void. (15 U.S.C. § 1635(b).)[8] Procedurally, lenders must return to the borrowers "any money or property given as earnest money, downpayment, or otherwise, and . . . terminat[e the] security interest," and borrowers must tender back to the lenders property, e.g., the loan proceeds, received from the lender. (15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d) (2006).)[9] Stated otherwise, after rescission, borrowers are " 'not liable for any finance or other charge' " such as interest, commissions, or extra payments in a TILA rescission. (*Semar v. Platte Valley Federal S & L Ass'n, supra,* 791 F.2d at p. 705; 15 U.S.C. § 1635(b);[10] see also *Pulphus v. Sullivan, supra,* 2003 WL 1964333, at p. *17.)

By contrast, a refinance is "[t]he discharge of an obligation with funds acquired through the creation of a new debt . . . ." (Black's Law Dict. (6th ed. 1990) p. 1281, col. 2.) But, a refinance may not reimburse borrowers for the downpayment, finance charges, commissions, or fees paid in connection with the first loan. (*McIntosh v. Irwin Union Bank and Trust, Co., supra,* 215 F.R.D. at p. 31; cf. *Mayfield v. Vanguard Sav. & Loan Ass'n., supra,* 710 F.Supp. at p. 148.) A refinance does not return the borrowers to the status quo ante. Here, after the refinance, there *did* remain something to rescind, namely, the interest, fees, penalties, and charges that the Lozos paid under the first loan. A holding that after a refinance there remains nothing to rescind in this case, would provide unscrupulous lenders with a means of laundering their TILA violations in the initial loan by refinancing it with a second loan, while

---

[8] Title 15 United States Code section 1635(b) states in pertinent part: "Return of money or property following rescission [¶] When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor . . . becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor . . . ."

[9] While these procedures may be modified by courts (15 U.S.C. § 1635(b), last sentence; *Yamamoto v. Bank of New York* (9th Cir. 2003) 329 F.3d 1167, 1173), each of these events constitutes a recognized part of the process of rescission under title 15 of the United States Code section 1635(b).

[10] The lender's obligation to return the money paid to it is part of the rescission remedy under title 15 of the United States Code section 1635(b), not a damages remedy in title 15 United States Code section 1640. (*Pulphus v. Sullivan, supra,* 2003 WL 1964333, at p. *17, fn. 9.)

forever preventing borrowers from recouping their wrongfully paid finance charges, downpayments, and other fees.

We disagree with Pacific Shore and its amicus curiae, citing *IT Corp. v. Superior Court* (1978) 83 Cal.App.3d 443 at page 451 [147 Cal.Rptr. 828], that if we do not follow *King* we will create forum shopping opportunities. In *IT*, there was implicit support for the Ninth Circuit view in a California case. Yet, no California case has weighed in on the issue here. More important, federal courts disagree about whether to follow *King*. We are persuaded by the reasoning of the cases from other jurisdictions and are convinced to follow them. In any event, we decline to follow *King* merely to avoid the potential for forum shopping where the holding of *King* has the effect of undermining TILA and the purposes for which TILA was enacted.

■ Turning to the undisputed facts here, the Lozos were entitled to rescind the first loan at the time they notified Pacific Shore that they were exercising their rescission right, notwithstanding they had refinanced that loan. With the second loan, the Lozos repaid the outstanding debt of the first loan along with a prepayment penalty. *Yet, Pacific Shore never tendered the Lozos any money and property the Lozos had paid to Pacific Shore in the form of up-front fees and costs, such as downpayment, fees, penalties, and interest.* The refinance *did not* return the Lozos to the status quo ante. Effectively, the refinance operated only as an incomplete rescission. Because Pacific Shore unlawfully declined the Lozos' request to rescind the first loan, the trial court erred in granting its motion for summary judgment.

b. *The Lozos are not entitled to damages under TILA.*

■ The trial court also ruled that the Lozos' claim for damages under section 1640(e) of title 15 of the United States Code, as opposed to their claim for rescission, was barred by the statute of limitations. We agree. TILA requires borrowers to file an action "within one year from the date of the occurrence of the violation." (15 U.S.C. § 1640(e).) The alleged violation here is the failure to make proper and timely disclosures at least three days before consummation of the transaction, i.e., August 4, 2000. Thus, the Lozos had until August 3, 2001, to file their complaint. Their complaint for TILA damages is time-barred as it was filed on September 4, 2003.

To summarize, the trial court erred in ruling that rescission was unavailable to the Lozos, although it properly applied the statute of limitations to bar the Lozos' claim for damages. Summary judgment of the cause of action under TILA must be reversed.

4. *Summary judgment of the Lozos' UCL cause of action was improperly granted.*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is reversed. Respondent to pay costs on appeal.

Croskey, Acting P. J., and Kitching, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 19, 2006, S144018.

---

[*]See footnote, *ante*, page 1342.