[No. B231310. Second Dist., Div. Three. Nov. 10, 2011.]

MIKE HALIGOWSKI et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MARIO PANTUSO, Real Party in Interest.

COUNSEL

Higgs, Fletcher & Mack, John Morris, James M. Peterson and Victoria E. Fuller for Petitioners.

No appearance for Respondent.

Felahy Law Group, Allen B. Felahy, Oscar Ramirez, Boris Sorsher and Zack Domb for Real Party in Interest.

OPINION

**ALDRICH, J.—**

## INTRODUCTION

California's Military and Veterans Code section 394[1] prohibits employers from discriminating against members of the armed forces. In this case of first

---

[1] All further statutory references are to the Military and Veterans Code, unless otherwise noted.

impression, we are asked to decide whether plaintiffs may hold supervisors personally liable for discrimination under section 394. We conclude that, like the California Fair Employment and Housing Act (the FEHA) (Gov. Code, § 12900 et seq.), another employment discrimination statute which contains similar language and embodies similar goals, section 394 allows servicemen and servicewomen plaintiffs to hold their employers, but not individual employees, liable for discrimination. Accordingly, we grant the writ petition and issue a peremptory writ of mandate.

## FACTUAL AND PROCEDURAL BACKGROUND

For purposes of review, we assume the truth of the following allegations extracted from the complaint (*Wells Fargo Bank, N.A. v. Superior Court* (2008) 159 Cal.App.4th 381, 385 [71 Cal.Rptr.3d 506]): While employed by defendant, Safway Services, LLC,[2] plaintiff Lieutenant Mario Pantuso was called to active duty with the Navy. When Pantuso returned from his six-month deployment in Iraq and asked for his job back, his immediate supervisor at Safway, Mike Haligowski, and the regional manager, Greg Chomenko, informed Pantuso that he was terminated from employment.

Pantuso sued Safway, Haligowski, and Chomenko for damages for discrimination and retaliation in violation of section 394, subdivisions (a) and (d). He also sought damages from Safway only for wrongful retaliation and termination in violation of public policy. Pantuso's complaint alleges, because of his membership in the Navy, that Safway and the individual defendants discriminated against him by giving him negative performance evaluations after he informed his employers that he would be deployed, and then terminating him from employment because of his military service, refusing to reemploy him upon return from service in Iraq, and refusing to pay him an earned bonus.

Haligowski and Chomenko (the individual defendants) demurred to the complaint on the ground that supervisors cannot be held individually liable for employment-related decisions under the Military and Veterans Code. The trial court overruled the demurrer ruling that "based on the plain language of California Military and Veterans' Code [section] 394, the individual defendants are subject to liability" because "person means person." The individual defendants then petitioned for writ of mandate to direct the trial court to vacate its order overruling the demurrer and to enter a new order sustaining the demurrer without leave to amend.

---

[2] Pantuso alleged his employer was both Safway Services, LLC, and Safway Services, LP. For clarity we refer to his employer as Safway.

## DISCUSSION

Section 394, subdivision (a) reads: "No *person* shall discriminate against any officer, warrant officer or enlisted member of the military or naval forces of the state or of the United States because of that membership. No member of the military forces shall be prejudiced or injured *by any person, employer, or officer or agent of any corporation, company, or firm* with respect to that member's employment, position or status or be denied or disqualified for employment by virtue of membership or service in the military forces of this state or of the United States." (Italics added.)

Section 394, subdivision (d) reads in part: "No *employer or officer or agent of any corporation, company, or firm, or other person*, shall discharge any person from employment because of the performance of any ordered military duty or training or by reason of being an officer, warrant officer, or enlisted member of the military or naval forces of this state . . . ." (Italics added.)

This case points a laser focus on the phrase "person, employer, or officer or agent of any corporation, company, or firm" in subdivision (a) and substantially identical language in subdivision (d) of section 394. The Legislature explained its intent with respect to section 394 thusly: "It is the intent of the Legislature that persons who are members of the military services not be harmed by virtue of that membership, with respect to their employment." (Stats. 1991, ch. 36, § 2, p. 128.) This declaration does not clarify whether, by the use of the words "person," "officer," and "agent," the Legislature intended to make supervisors personally liable for discriminating against a member of the armed forces while performing regular management functions, and so we must make that determination.

When construing a statute, our task is to " 'ascertain the intent of the drafters so as to effectuate the purpose of the law. [Citation.] Because the statutory language is generally the most reliable indicator of legislative intent, we first examine the words themselves, giving them their usual and ordinary meaning and construing them in context.' [Citation.]" (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663 [3 Cal.Rptr.3d 390, 74 P.3d 166].) " '[W]e presume the Legislature meant what it said, and the plain meaning of the statute governs. [Citation.]' [Citation.]" (*An Independent Home Support Service, Inc. v. Superior Court* (2006) 145 Cal.App.4th 1418, 1432 [52 Cal.Rptr.3d 562].) We accord "significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) If the language of a statute is unambiguous, the plain meaning governs and it is

unnecessary to resort to extrinsic sources to determine the legislative intent. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 919 [129 Cal.Rptr.2d 811, 62 P.3d 54].) If the statutory language does not yield a plain meaning, we may consider extrinsic evidence of intent, including the legislative history. (*Mejia v. Reed, supra*, at p. 663.)

The use of the words "officer or agent of any corporation" and "person" in section 394 does not answer the question before us, namely whether that "agent," "officer" or "person" may be held personally liable for discrimination against a member of the military forces. Division 2, part 1, chapter 7 of the Military and Veterans Code, which encompasses section 394, does not define "employer," "person," "agent," or "officer." (See § 389.) Nor does section 394 spell out an employee's exposure to personal liability.

Thus, we perceive two possible constructions of the use of the words "person" and "agent" in section 394. The first, as Pantuso argues and as the trial court ruled, is that the Legislature intended to hold individual supervisors personally liable for discrimination under this statute. The second possible construction is that, as is generally accepted in other employment discrimination contexts such as the FEHA, the use of the words "agent" and "other person" was " 'intended only to ensure that *employers* will be held liable if their supervisory employees take actions later found discriminatory, and that *employers* cannot avoid liability by arguing that a supervisor failed to follow instructions or deviated from the employer's policy.' " (*Reno v. Baird* (1998) 18 Cal.4th 640, 647 [76 Cal.Rptr.2d 499, 957 P.2d 1333] (*Reno*), quoting *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 66 [53 Cal.Rptr.2d 741] (*Janken*).) Where " 'the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.]" (*Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1163 [72 Cal.Rptr.3d 624, 177 P.3d 232] (*Jones*), quoting *Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].)

Although the parties did not discuss it, we looked at the legislative history of section 394 and conclude that it does not shed light on the Legislature's intent as to the meaning of "person" and "agent" in section 394. The original version of section 394 was based on Penal Code former section 421, which provided "No association or corporation shall by any constitution, rule, by-law, resolution, vote or regulation, discriminate against any member of the national guard of California because of his membership therein. Any person who willfully aids in enforcing any such constitution, rule, by-law, resolution, vote or regulation against any member of said national guard of California, is guilty of a misdemeanor." (Stats. 1905, ch. 195, § 1, p. 190.) As enacted in

1935, section 394 read, " 'No person shall discriminate against any officer or enlisted man of the military or naval forces of the State or of the United States because of his membership therein. . . . [¶] . . . [¶] No employer or officer or agent of any corporation, company, or firm, or other person shall discharge any person from employment because of being an officer or enlisted man of the military . . . . [¶] Any person violating any of the provisions of this section is guilty of a misdemeanor.' " (Stats. 1935, ch. 389, § 394, p. 1363.) In 1947, the Legislature amended section 394 to commence with language similar to that of subdivision (d) today: " 'No employer or officer or agent of any corporation, company, or firm, or other person . . . .' " (Stats. 1947, ch. 393, § 13, p. 962.) In 1951, the Legislature rewrote the statute to read as it appears now. (Historical and Statutory Notes, 46 West's Ann. Mil. & Vet. Code (2010 ed.) foll. § 394, p. 180.) Research has revealed no indication whether the Legislature meant to impose personal liability on individual employees and agents for discharging servicemen in 1905 and 1935. In the years since 1951, the jurisprudence in other areas of employment discrimination law, in statutes with similar language to that contained in section 394, has evolved significantly. As no court has been asked to address the meaning of these words in section 394, the pertinent legislation in the Military and Veterans Code has not caught up with the evolution of the body of employment discrimination law in California. Therefore, we must look to other sources to aid in our interpretation.[3]

> 1. *A federal district court concluded that individuals working for the employer, including supervisors, may not be held personally liable under section 394, subdivision (a).*

There is no California case on point. However, in an unpublished opinion, the federal district court in *Kirbyson v. Tesoro Refining and Marketing Co.* (N.D.Cal., Mar. 2, 2010, No. 09-3990 SC) 2010 WL 761054 (*Kirbyson*) addressed this same question, namely, whether individual supervisors, employees, and corporate agents could be held personally liable for employment discrimination claims under California's Military and Veterans Code when the discrimination arose out of the performance of normal management

---

[3] Section 394, subdivision (g) reads, "Any person violating this section is guilty of a misdemeanor. In addition, any person violating any of the provisions of this section shall be liable for actual damages and reasonable attorney's fees incurred by the injured party." Of course, corporations can be found guilty of committing misdemeanors (cf. *United Medical Management Ltd. v. Gatto* (1996) 49 Cal.App.4th 1732, 1736–1737 [57 Cal.Rptr.2d 600], citing Corp. Code, § 2258 [a foreign corporation violating ch. 21 of the Corp. Code "is guilty of a misdemeanor . . ."]; *People v. Hacker Emporium, Inc.* (1971) 15 Cal.App.3d 474, 479 [93 Cal.Rptr. 132] [holding the term "person" for purposes of assessing civil penalties for violations of false advertising in Bus. & Prof. Code, § 17536 includes corporations].) Therefore, the presence of the misdemeanor penalty for violation of section 394 does not affect our analysis, Pantuso's suggestion to the contrary notwithstanding.

duties. (*Id.* at p. *4.) In the absence of California authority interpreting section 394, the *Kirbyson* court applied the reasoning of *Janken, supra,* 46 Cal.App.4th at pages 63–64, interpreting similar language in the FEHA. (*Kirbyson,* at p. *4.) *Kirbyson* found the Legislature's inclusion of the words "any person" in section 394, subdivision (a) to be ambiguous and "does not necessarily attach personal liability to supervisors where the suit properly lies against their employers." (*Kirbyson,* at p. *5.) *Kirbyson* concluded that a "California court would not interpret the statute so as to reach 'persons' who are being sued for claims that 'arise out of the performance of necessary personnel management duties.' [Citation.]" (*Id.* at p. *4, quoting *Janken, supra,* at pp. 63–64.) *Kirbyson* dismissed the plaintiff's section 394 discrimination claims against the individual defendants. (*Kirbyson,* at p. *5.) Although *Kirbyson* is merely persuasive authority, we agree with its reasoning and result.[4] We explain.

2. *The FEHA contains similar language and does not make individual supervisors personally liable for discrimination and retaliation.*

As with section 394, the FEHA is a California employment discrimination statute and a review of cases under the FEHA sheds light on how California courts and the Legislature view the individual liability of supervisors for discriminatory conduct in the performance of regular management duties. The FEHA makes it illegal for "an employer" to discriminate. (Gov. Code, § 12940, subd. (a).) "Employer" is defined in the FEHA as including "*any person* regularly employing five or more persons, or *any person acting as an agent* of an employer, directly or indirectly . . . ." (Gov. Code, § 12926, subd. (d), italics added.) The FEHA also makes it unlawful to retaliate against an employee for opposing practices forbidden under the FEHA: Subdivision (h) of section 12940 of the Government Code forbids "*any* employer, labor organization, employment agency, or *person*" from retaliating. (Italics added.)

Although on their face, these FEHA provisions could be read to hold individual supervisors personally liable, two Supreme Court cases and one appellate court case have established that individual supervisors and agents of employers cannot be held personally responsible under these FEHA statutes.

*Janken,* upon which *Kirbyson* relied, was the first case to confront the question of whether a supervisor is "an agent of an employer" (Gov. Code,

---

[4] Unpublished federal opinions are " 'citable notwithstanding California Rules of Court, rule [8.1115] which only bars citation of unpublished *California* opinions. Therefore, [*Kirbyson*] [is] citable as persuasive, although not precedential, authority. [Citation.]' [Citations.]" (*Pacific Shore Funding v. Lozo* (2006) 138 Cal.App.4th 1342, 1352, fn. 6 [42 Cal.Rptr.3d 283], quoting *City of Hawthorne ex rel. Wohlner v. H&C Disposal Co.* (2003) 109 Cal.App.4th 1668, 1678, fn. 5 [1 Cal.Rptr.3d 312].)

§ 12926, subd. (d)) and may thus be held personally liable under the FEHA. (*Janken, supra,* 46 Cal.App.4th at pp. 65–66.) *Janken* found that the "agent" language in the FEHA's definition of "employer" (Gov. Code, § 12926, subd. (d)) was ambiguous. Either, the Legislature intended to make every supervisory employee an "employer" and at risk of personal liability whenever he or she took an action that was later found to be discriminatory (*Janken, supra,* at pp. 65–66), or by including the "agent" language, the Legislature intended to ensure that employers would be held liable if their supervisory employees make discriminatory personnel decisions, and to prevent employers from avoiding liability by arguing the supervisors deviated from the employers' policy. (*Id.* at p. 66.) *Janken* concluded that the latter meaning was the one intended by the Legislature, for several reasons relevant to the Military and Veterans Code. (*Ibid.*)

First, *Janken* based its conclusion on the wording of the FEHA. (*Janken, supra,* 46 Cal.App.4th at p. 60.) Second, *Janken* noted the "fundamental distinction" between the way the FEHA treats harassment, on the one hand—for which supervisors may be held personally liable—and discrimination on the other hand—for which, *Janken* held, individuals are not personally responsible. (46 Cal.App.4th at pp. 63–64.) Harassment is conduct "not necessary for performance of a supervisory job." (*Id.* at p. 63.) "No supervisory employee needs to use slurs or derogatory drawings, to physically interfere with freedom of movement, to engage in unwanted sexual advances, etc. in order to carry out the legitimate objectives of personnel management." Supervisors can avoid harassment claims by refraining from such conduct. (*Id.* at p. 64.) Juxtaposed to harassment are discrimination claims which "arise out of the performance of necessary personnel management duties." (*Id.* at p. 63.) "An individual supervisory employee cannot . . . refrain from engaging in the type of conduct which could later give rise to a discrimination claim. Making personnel decisions is an inherent and unavoidable part of the supervisory function. Without making personnel decisions, a supervisory employee simply cannot perform his or her job duties." (*Id.* at p. 64.)

The third relevant reason for *Janken*'s conclusion that individual supervisors may not be held personally liable under the FEHA is pragmatic and policy based. *Janken* elucidated, "imposing personal liability against individual supervisory employees [would] add[] little to an alleged victim's legitimate prospects for monetary recovery." (*Janken, supra,* 46 Cal.App.4th at pp. 74–75.) By contrast, *Janken* perceived "potentially severe adverse effects of imposing personal liability on individual supervisory employees." (*Id.* at p. 72.) *Janken* determined "it is manifest that if every personnel manager risked losing his or her home, retirement savings, hope of children's college education, etc., whenever he or she made a personnel management decision, management of industrial enterprises and other economic organizations would be seriously affected." (*Id.* at p. 73.) Thus, *Janken* concluded,

holding a supervisor individually liable for "personnel management decisions which are facially common and unremarkable, but which may in hindsight be considered discriminatory" (*ibid.*) "would place a supervisory employee in a direct conflict of interest with his or her employer every time that supervisory employee was faced with a personnel decision. . . . The employee would . . . be placed in the position of choosing between loyalty to the employer's lawful interests at severe risk to his or her own interests and family, versus abandoning the employer's lawful interests and protecting his or her own personal interests. . . . We believe that if the Legislature intended to place all supervisory employees in California in such a conflict of interest, the Legislature would have done so by language much clearer than that used here" (*id.* at p. 74). For these and other reasons, *Janken* held that the trial court had properly dismissed the individual supervisory employees at the pleading stage because "only employers—and not individual supervisory employees—are at risk of liability for discrimination . . . ." (*Id.* at p. 80.)

The Supreme Court in *Reno, supra*, 18 Cal.4th 640 resoundingly approved *Janken. Reno* held that the "FEHA, like similar federal statutes, allows persons to sue and hold liable their employers, but not individuals." (*Id.* at p. 643.) In defending *Janken, Reno* rejected the argument that respondeat superior principles could be found in the FEHA even without the "agent" language, and so the use of the word "agent" was surplusage and unnecessary. (18 Cal.4th at p. 657.) *Reno* stated: "The issue in this case is *individual* liability for discrimination. Therefore, we express no opinion on the scope of *employer* liability under the FEHA for either discrimination or harassment. . . . [W]hatever that language means precisely, it is not surplusage. The Legislature may reasonably have chosen to define the scope of employer liability expressly rather than to leave it to judicial interpretation. . . . [¶] . . . Legislatures are free to state legal principles in statutes, even if they repeat preexisting law, without fear the courts will find them unnecessary and, for that reason, imbued with broader meaning." (*Id.* at p. 658.)

*Reno* also held that the language in former subdivision (g) of section 12940 of the Government Code, forbidding " ' "*any person* to aid, abet, incite, compel or coerce the doing of any of the acts forbidden" ' " under the FEHA did not impose personal liability on individuals. (*Reno, supra*, 18 Cal.4th at pp. 655–656, italics added.) *Reno* adopted *Janken*'s reasoning that " 'The concept of aiding and abetting involves two separate persons, one helping the other. Here we deal with individual employees of a corporate employer. A corporation can act only through its individual employees. [Citation.] . . . [¶] . . . [¶] . . . Linguistically, it is questionable whether it can properly be said that an employee who exercises delegated personnel management authority is "aiding and abetting" his or her employer in managing personnel . . . .' " (*Ibid.*, quoting from *Janken, supra*, 46 Cal.App.4th at pp. 77–79.) For these

and other reasons, *Reno* held that "individuals who do not themselves qualify as employers may not be sued under the FEHA for alleged discriminatory acts." (*Reno*, at p. 663.)

More recently, the Supreme Court in *Jones, supra,* 42 Cal.4th 1158 analyzed Government Code section 12940, subdivision (h) which, similar to Military and Veterans Code section 394, as noted, forbids "any employer, labor organization, employment agency, *or person*" to retaliate. (Gov. Code, § 12940, subd. (h), italics added.) *Jones* rejected the argument that the use of "person" "compels the conclusion that all persons who engage in prohibited retaliation are personally liable, not just the employer." (*Jones, supra,* at p. 1162.) *Jones* first looked at the statutory language and concluded it is not plain and unambiguous. Although the Legislature knew how to clearly make an employee "personally liable" for harassment (see Gov. Code, § 12940, subd. (j)(3) ["An employee of an entity . . . is personally liable for any harassment prohibited by this section that is perpetrated by the employee . . . ."]), the language of the retaliation provision was much less patent. (*Jones,* at p. 1162.)

The retaliation provision, Government Code section 12940, subdivision (h), *Jones* explained, is similar in effect to the discrimination statute, section 12940, subdivision (a). *Reno* had held that notwithstanding subdivision (a) does not utilize the word "person" to describe who may not discriminate, it nonetheless governs discrimination by a "person" because Government Code section 12926, subdivision (d) defines "employer" as including " '*any person* acting as an agent of an employer, directly or indirectly . . . .' " (*Jones, supra,* 42 Cal.4th at p. 1163, italics added.) Thus, *Jones* applied the *Reno* and *Janken* rationale for concluding that individuals would not be personally liable for retaliation under the FEHA. (42 Cal.4th at p. 1164.) *Jones* reasoned that imposing liability on individual supervisory employees would not enhance plaintiffs' recovery while it would threaten individual supervisory employees with the specter of financial ruin (*id.* at pp. 1165–1166) and that it would severely impair the exercise of supervisory judgment and place supervisors in direct conflict of interest with their employers (*ibid.*). Additionally, *Jones* found support for its position in the lack of legislative history behind inclusion of the word "person" in Government Code section 12940, subdivision (h). (*Jones,* at pp. 1169–1173.) Thus, *Jones* held that an individual may not be held personally liable for retaliation under the FEHA. (42 Cal.4th at pp. 1160, 1173.)

3. *The reasoning of the FEHA cases applies to section 394.*

The FEHA prohibits employers from practicing certain kinds of discrimination and retaliatory behavior. Section 394, subdivisions (a) and (d)

prohibit employers from practicing a specific kind of discrimination and retaliation, namely against members of the military or naval forces. As both the FEHA and section 394 are antidiscrimination statutes, the logic for declining to hold individuals personally liable for discrimination and retaliation under the FEHA should apply to section 394.

Additionally, the statutory language of section 394 is parallel to that used in the FEHA. All of these statutes forbid a "person" from engaging in acts that are discriminatory or retaliatory. (Compare § 394, subds. (a) ["No *person* shall discriminate . . . ."] & (d) ["No employer or officer or agent of any corporation, company, or firm, *or other person*" shall discriminate] with Gov. Code, §§ 12926, subd. (d) [defining employer who may not discriminate as "any person"], 12940, subd. (h) [unlawful employment practice for "any employer, labor organization . . . *or person*" to retaliate].) (Italics added.) Given the similarity in the language of, and goals behind, these employment discrimination statutes, it would be illogical and incongruous to hold that the word "person" in section 394 subjects supervisory employees to personal liability whenever they engage in a discriminatory act against members of the military forces when they are not otherwise personally at risk for managerial acts that discriminate on the basis of race, gender, age, or disability.

Furthermore, just as under the FEHA, a supervisor cannot avoid engaging in the type of conduct, such as hiring, firing, demoting, and the like, which might later give rise to a discrimination claim by a member of the military or naval forces. Making and implementing personnel decisions are inherent in supervisors' duties and for that reason the Supreme Court held personal liability should not attach to managers for engaging in their regular duties. (*Reno, supra*, 18 Cal.4th at pp. 651–653; *Jones, supra*, 42 Cal.4th at p. 1166.) We are persuaded by *Janken*, *Reno*, and *Jones*, that holding individual supervisors personally liable for discriminatory acts against members of the military forces based solely on those personnel decisions could discourage effective management while adding minimal compensation to victims. (*Janken, supra*, 46 Cal.App.4th at pp. 72–75; *Reno*, at pp. 651–653; *Jones*, at pp. 1164–1173.)

Most important, the Legislature knows how to specify its intent to hold a manager individually liable. The Legislature spelled out the personal liability of supervisory employees for harassment because supervisors can avoid harassment claims by refraining from such conduct. (*Janken, supra*, 46 Cal.App.4th at p. 64.) Subdivision (j)(3) of Government Code section 12940 states, "An employee of an entity subject to this subdivision [(prohibition against harassment in workplace)] *is personally liable* for any harassment prohibited by this section that is perpetrated by the employee . . . ." (Italics added.) Although the Legislature could make individual employee supervisors

personally liable for discrimination against a member of the armed forces, section 394 does not spell out personal liability in such clear and plain language and makes no reference to employees. The Legislature amended section 394 after *Janken* and *Reno* were decided and yet did not amend subdivisions (a) and (d) to clearly establish that supervisory employees in California are personally at risk of liability for discrimination against members of the armed forces in performance of normal management duties. Had the Legislature intended to hold individual managers and supervisors liable under section 394, it would have done so more clearly and expressly.

For the foregoing reasons, we hold that the use of the word "person" in section 394 does not attach personal liability to supervisors for acts that turn out later to be discriminatory against members of the military or naval forces where those acts arose out of the performance of normal management duties. Plaintiffs who are subject to military duty or training that interrupts their work may hold their employers, but not individuals, liable for discrimination in violation of section 394. The plaintiff employee's target remains the employer. (*Janken, supra*, 46 Cal.App.4th at p. 75.)

### 4. *Counterarguments*

Pantuso contends that we should not analogize to the FEHA cases because that statute does not employ the "officer or agent" language found in section 394. (See, e.g., § 394, subd. (d) ["No employer or *officer or agent* of any corporation, company, or firm, or other person," shall discharge an employee who is subject to military duty or training that interrupts work (italics added)].) To the contrary, as we explained, the FEHA defines "employer" as including "any person regularly employing five or more persons, or *any person acting as an agent* of an employer, directly or indirectly . . . ." (Gov. Code, § 12926, subd. (d), italics added.) *Reno* and *Janken* analyzed this language and held that individual supervisory employees are not personally liable for managerial acts that are discriminatory notwithstanding they are "agents" of employers. (*Reno, supra*, 18 Cal.4th at pp. 645, 647–655, quoting *Janken, supra*, 46 Cal.App.4th at pp. 65–66, 69–72, 76–77.) Furthermore, *Reno* rejected the argument that respondeat superior principles could be found in the FEHA without resort to the "agent" language and so the word "agent" was surplusage. The Supreme Court explained that the Legislature could define the scope of employer liability expressly and could state legal principles without rendering them surplusage. (*Reno, supra*, at pp. 657–658.) Applying *Reno*'s and *Janken*'s conclusions, the use of "agent" in section 394 is to ensure that employers cannot evade liability by arguing that supervisors deviated from their employer's policies.

Pantuso cites *Winarto v. Toshiba America Electronics Components* (9th Cir. 2001) 274 F.3d 1276 (*Winarto*), to argue there is precedent for holding individual employees liable for violating section 394. He asserts that *Winarto* held individual defendants liable for aiding the employer in depriving the plaintiff of civil rights. However, after noting that the defendants did not "argue on appeal that [the individuals] are somehow immun[ized] from this kind of liability," the Ninth Circuit in *Winarto* mused in a footnote, more than six years before the California Supreme Court decided *Jones*, that two individual managers might be subject to personal liability for " 'aid[ing], [and] incit[ing], or conspir[ing]' " in violent acts by another manager against the plaintiff in violation of Civil Code sections 51.7 and 52, subdivision (b). (*Winarto*, at p. 1290, fn. 16.) It follows, *Winarto* stated, "that [the employer] can be liable for the acts of its agent." (*Winarto*, at p. 1290, fn. 16, citing Civ. Code, §§ 51.7, 52, subd. (b).) Not only is this statement in *Winarto* dicta as it was not part of the appeal (see *Winarto*, at p. 1290; *Santisas v. Goodin* (1998) 17 Cal.4th 599, 620 [71 Cal.Rptr.2d 830, 951 P.2d 399]), but *Jones* later specifically disagreed with *Winarto* on this point when reaching the opposite conclusion. (*Jones, supra*, 42 Cal.4th at p. 1162.)

■ Moreover, we doubt *Winarto*'s aiding and abetting analysis would apply under section 394. (*Winarto, supra*, 274 F.3d at p. 1290, fn. 16.) As *Reno* observed, aiding and abetting involves two separate people, one who helps the other. Thus, a supervisor cannot likely aid and abet his or her employer because the employer can only act through its individual employees. (*Reno, supra*, 18 Cal.4th at pp. 655–656, quoting *Janken, supra*, 46 Cal.App.4th at pp. 77–78.)[5]

We likewise disagree with Pantuso that other cases have held individuals personally liable for employment discrimination. For this proposition, he cites *Accardi v. Superior Court* (1993) 17 Cal.App.4th 341 [21 Cal.Rptr.2d 292]. But, *Accardi* involved claims of harassment (*id.* at pp. 345–346), and as *Janken* pointed out, it is the "fundamental distinction" between the way in which the FEHA treats harassment and discrimination that results in holding

---

[5] Pantuso also cites to section 394, subdivision (h) that "[t]he remedies provided for in this section are not intended to be exclusive but are in addition to the remedies provided for in other laws, including Sections 51 and 52 of the Civil Code." Citing *Winarto*'s mention of Civil Code sections 51.7 and 52, subdivision (b), he argues "it is clear that supervisors/managers can indeed be found liable (outside the area [of] harassment) in the employment context." Apart from the fact that *Winarto*'s discussion was dicta, we otherwise reject Pantuso's argument. It is obvious from its language, in subdivision (c), that section 394 is not aimed solely at discrimination in *employment*. Indeed, the Legislature declared its intent by amending section 394 in 1991, " 'to clarify that discrimination prohibited under subdivision (c) of Section 394 of the Military and Veterans Code is also prohibited by Sections 51 and 52 of the Civil Code, which apply to all arbitrary discrimination by *business establishments*.' " (Stats. 1991, ch. 36, § 2, p. 128, italics added.)

supervisory employees personally liable for the former and not for the latter (*Janken, supra*, 46 Cal.App.4th at p. 63).

Next, Pantuso points to the federal counterpart to section 394, the Uniformed Services Employment and Reemployment Rights Act of 1994 (the USERRA) (38 U.S.C. § 4301 et seq.), which is designed to protect those who serve in the armed forces from wrongful termination and discrimination. Pantuso cites the United States Department of Labor's regulations under the USERRA establishing that individual supervisors may be held personally liable for discrimination in violation of the USERRA. (20 C.F.R. § 1002.5(d)(1)(i) (2011).) The Department of Labor justified its position based on at least two federal opinions holding that individual supervisors may be held liable under the USERRA, and on the USERRA's definition of "employer" (38 U.S.C. § 4303(4)(A)(i); 70 Fed.Reg. 75246 (Dec. 19, 2005).) Pantuso observes that *Bursese v. Paypal, Inc.* (N.D.Cal., Feb. 12, 2007, No. C-06-00636 RMW) 2007 U.S.Dist. Lexis 12785 and *Tarin v. County of Los Angeles* (9th Cir. 1997) 123 F.3d 1259, have held that " 'the same analysis applies to plaintiff's claim under California Military and Veterans Code section 394' " as applies to claims under the USERRA, and so he argues we must import the USERRA definition of "employer" into section 394. We disagree with Pantuso, first, because *Bursese* and *Tarin* involved procedural issues, and not construction of the meaning of the USERRA's use of the word "person" (*Bursese v. Paypal, Inc.*, *supra*, at pp. *16–*22 [burden of proof]; *Tarin v. County of Los Angeles, supra*, at pp. 1265–1266 [collateral estoppel], superseded by statute as stated in *Leisek v. Brightwood Corp.* (9th Cir. 2002) 278 F.3d 895, 899, fn. 2.)

■ The second and more important reason we disagree with Pantuso's reliance on the USERRA is that although administrative agencies' interpretation of their regulations and language is entitled to great weight, we will not defer when the construction is unauthorized, unreasonable, or clearly erroneous. (See *North Gualala Water Co. v. State Water Resources Control Bd.* (2006) 139 Cal.App.4th 1577, 1607 [43 Cal.Rptr.3d 821].) The USERRA is not analogous to section 394 and so we will not apply the Department of Labor's construction here. Federal cases attach the USERRA liability to those individual employees who have the power to hire or fire other employees. (Cf. *Satterfield v. Borough of Schuylkill Haven* (E.D.Pa. 1998) 12 F.Supp.2d 423, 438; *Brooks v. Fiore* (D.Del., Oct. 11, 2001, No. 00-803 GMS) 2001 WL 1218448, p. *9, fn. 3.) The reason is that the USERRA defines "employer" as "any person, institution, organization, or other entity that pays salary or wages for work performed *or that has control over employment opportunities*, including—[¶] (i) *a person*, institution, organization, or other entity *to whom the employer has delegated the performance of employment-related responsibilities*." (38 U.S.C. 4303(4)(A), italics added.) This provision spells out the clear congressional intent to hold a supervisor personally responsible for

normal management conduct that turns out to violate the USERRA. By contrast, as explained, the California statute does not define "person" as used in section 394, and as used in that statute the word is ambiguous. By analogy to other California employment discrimination statutes, we conclude that the Legislature, knowing how to establish individual liability and declining to amend section 394 to do so, intends that individuals not be held personally liable for performance of normal management duties.

Lastly, Pantuso argues that California law cannot be interpreted to provide lesser benefits than the USERRA. He cites 38 United States Code section 4302(b) which states: "This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit *provided by this chapter*, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit." (Italics added.) Pantuso argues that were we to construe section 394 as precluding him from recovering against managers and supervisors individually, we would be limiting the benefits to which he is entitled. But, what the USERRA says in section 4302(b) is that the states may not limit the rights and benefits that the *USERRA* provides. (See *Breletic v. CACI, Inc.—Federal* (N.D.Ga. 2006) 413 F.Supp.2d 1329, 1337 ["Congressional intent behind the USERRA is clear: Section 4302(b) was intended to *preempt employer-employee agreements* that *limit rights provided under the USERRA* or put additional conditions on those rights."]; accord, *Lopez v. Dillard's Inc.* (D.Kan. 2005) 382 F.Supp.2d 1245, 1249, disagreed with in *Kitts v. Menards, Inc.* (N.D.Ind. 2007) 519 F.Supp.2d 837, 840; see also § 395.5.) The USERRA says nothing about the rights to which members of the military and naval forces are entitled *under state law*. We note Pantuso has not sued under the USERRA. Nothing in our construction of section 394 limits or reduces any right to which a member of the military forces is entitled under the USERRA. Indeed, our interpretation of section 394 maximizes the rights of members of the military forces by preventing employers from avoiding liability by claiming individual managers or supervisors deviated from their employers' policies. (*Reno, supra,* 18 Cal.4th at p. 647; *Janken, supra,* 46 Cal.App.4th at p. 66.)

For the foregoing reasons, we hold that individual employees may not be held personally liable under section 394 for alleged discriminatory acts that arise out of the performance of regular and necessary personnel management duties.

## DISPOSITION

The petition is granted. The order to show cause is discharged. Let a peremptory writ of mandate issue directing the trial court to vacate the order overruling the demurrer of Haligowski and Chomenko, and enter a new order sustaining the demurrer without leave to amend. All parties to bear their own costs on appeal.

Croskey, Acting P. J., and Kitching, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied February 15, 2012, S198785.