Filed 2/25/14  Moreno v. State Dept. of State Hospitals CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| RONNIE MORENO,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>STATE DEPARTMENT OF STATE HOSPITALS et al.,<br><br>    Defendants and Respondents. | B246305<br><br>(Los Angeles County<br>Super. Ct. No. BC473087) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Amy D. Hogue, Judge.  Affirmed.

Jennifer Kramer Legal, Jennifer Kramer; The Aarons Law Firm and Martin Aarons for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Alicia M.B. Fowler, Assistant Attorney General, Bruce Reynolds, Michael E. Whitaker, and Jasmine K. Bath, Deputy Attorneys General, for Defendants and Respondents.

_____

Appellant Ronnie Moreno appeals after the grant of summary judgment on his complaint against respondents State Department of State Hospitals (formerly the Department of Mental Health) and Metropolitan State Hospital (MSH). Appellant, an employee of MSH, alleged disability discrimination and other related claims resulting from MSH's decision to withdraw an offer to transfer him to a new position. The trial court found that respondents had presented a legitimate nondiscriminatory reason for the adverse employment action. On appeal, appellant contends that (1) respondents did not meet their burden of refuting his prima facie case of disability discrimination, as facts pertinent to whether MSH's employment decision was motivated by discriminatory animus were in dispute; (2) he presented direct evidence of discrimination, sufficient, standing alone, to preclude the grant of summary judgment, and (3) the record contains evidence of pretext sufficient to raise a doubt about respondents' asserted reasons for the employment decision. Finding no reversible error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Complaint*

In November 2011, appellant brought suit against respondents, asserting multiple claims under the Fair Employment and Housing Act (Govt. Code, § 12940, et seq., FEHA), including disability discrimination, retaliation, failure to engage in the interactive process, failure to reasonably accommodate a physical disability, and failure to take reasonable and appropriate steps to prevent, investigate and correct discrimination and retaliation.[1]

---

[1]	A separate claim for retaliation under Government Code section 12945.2 -- part of the California Family Rights Act, prohibiting discrimination based on the employee's exercise of his or her right to take family leave -- was asserted and dismissed by appellant.

According to the factual allegations of the complaint, appellant had been employed by MSH for over five years, most recently as an automotive equipment operator. In August 2010, appellant applied for one of two posted positions to be a forensic court escort for MSH.[2] He was interviewed by Joann Trinidad, the unit supervisor in MSH's forensic escort department, and Aubri Griffis, the nursing coordinator. He was offered and accepted the position on September 29 and was scheduled to begin on October 18. On October 5, appellant injured his right ankle while at work and was put on limited duty status, which included no commercial vehicle driving. The limited duty status was scheduled to last until a few days after his projected start date for the forensic court escort position. He notified his new supervisor, Trinidad. Trinidad purportedly asked appellant if this was going to be a problem and if he went out on limited duty a lot, and indicated she might consider offering the position to the next person on the hiring list. Appellant thereafter contacted MSH's equal employment opportunity (EEO) office to report the conversation. On October 11, Eddie Park, the acting director of human resources, spoke to appellant, initially informing him he would need to be medically cleared by the October 18 start date. Appellant said he would try. Park later advised appellant the start date could be pushed back. Appellant contacted his doctor and was informed he would be released to perform the functions of the new position by October 18. On October 14, however, appellant was informed by Park that the employment offer was being withdrawn due to budget issues. Appellant contended that respondents "elected to place another individual in the

---

[2]    "Forensic court escorts" pick up mental health patients from their units, drive them to court dates, and provide assistance and support until the patient is returned. The forensic court escort position falls under the general classification of "psychiatric technician."

3

[forensic court escort position] rather than "identify potential accommodations that could be made . . . ."[3]

B. *Respondents' Motion for Summary Judgment*

Respondents moved for summary judgment, presenting evidence to show that the decision to withdraw the offer to appellant for the forensic court escort position was based on legitimate non-discriminatory reasons, specifically, the elimination of the position due to budget cuts.

In support of the motion, respondents set forth in their statement of undisputed facts (SOF) and presented evidence of the following: In July 2010, MSH advertised two forensic court escort vacancies. Appellant was one of several in-house candidates interviewed for the position by Joann Trinidad and Aubri Griffis, who ranked Ruben Gallegos and Cynthia Rowley as the top two candidates. Rowley subsequently reported she was not interested in the position. On September 24, Trinidad completed a reference check for Gallegos and offered him one of the positions. Gallegos accepted and was given a start date of October 7. On September 29 or 30, Trinidad checked appellant's references and offered him the remaining position. He accepted and was given a start date of October 18.

On October 8, appellant notified Trinidad that three days earlier he had suffered a work-related injury to his ankle, and that he had been released to work with restrictions, including no operation of a commercial vehicle. After their initial conversation, appellant called Trinidad back and left a message indicating that his injury would not pose a problem for performing the functions of the

---

[3] The complaint alleged that appellant filed a formal complaint about the withdrawal of the offer with MSH's EEO office in October 2010. A year later, he received a letter stating that the allegations had been investigated and were found to be unsubstantiated.

position and that he did not need any accommodation. On October 11, Eddie Park informed appellant that he had to be medically cleared before the start date for his new position. Appellant stated he would try to get clearance. On October 12, Park was informed by Cindy Lusch that the position had been eliminated due to budget cuts. On October 14, Park informed appellant that the offer was being withdrawn, as the position had been eliminated.

Respondents also presented evidence that while the recruiting and interviewing process was proceeding, unbeknownst to Trinidad, Griffis, and Park, the forensic court escort position for which appellant had interviewed, along with a number of other vacant MSH positions, were in the process of being eliminated. In January 2010, the Governor issued an executive order directing all state agencies to take immediate steps to achieve a five percent salary savings effective July 1. On August 25, Sandra Baskette, associate personnel analyst for MSH, prepared a "vacancy drill," a document that identified all positions that were vacant as of August 30, 2010. She identified the forensic court escort position offered to appellant as "vacant . . . with no commitment date." Baskette submitted the vacancy drill to the Department of Mental Health's headquarters. On September 30, Baskette learned from the Department's budget office that MSH was required to eliminate 47 positions, including "17.1" psychiatric technician positions and 13 psychiatric assistant/trainee positions.[4] On October 4, Baskette prepared a form identifying 47 positions to be deleted, retroactively effective July 1, 2010. One of

---

[4] According to Baskette, there were more than sufficient vacant technician positions to meet the quota, but only five vacant trainee positions. Accordingly, Baskette decided to eliminate or keep vacant eight more technician positions (a total of 25.1) to help meet the quota for trainee positions.

the positions was the forensic court escort position which had been offered to appellant, identified as no. 487-240-8253-004.[5]

When Baskette prepared the vacancy drill in August 2010 and the form identifying the positions to be eliminated on October 4, 2010, appellant had not been injured, and he did not report his injury to Trinidad until October 8. According to Trinidad's declaration, she was not involved in the decision to eliminate or keep vacant any forensic court escort positions and was not informed of the decision until sometime in early October.

### C. *Appellant's Opposition*

In opposing the motion, appellant did not dispute that the Governor had issued an executive order directing state agencies to take steps to achieve salary savings, that Baskette had been instructed by her superiors to prepare, and had prepared, a list of vacant positions at MSH to be eliminated to save money, and that Baskette's list included 25.1 psychiatric technician positions. Appellant pointed out, however, that under the evidence presented by respondents, both forensic court escort positions in central nursing services for which he and Gallegos had interviewed were eliminated by Baskette. He contended the fact that Gallegos was allowed to assume an alternate forensic court escort position in October 2010 in another unit suggested he had been afforded favorable treatment.

To support his claim of favorable treatment for Gallegos potentially related to appellant's disability, appellant submitted the personnel form documenting Gallegos's transfer to the forensic court escort position -- referred to as a "5408 form." The 5408 form contained handwriting, apparently added in mid-October,

---

[5] The number 487 referred to MSH; 240 referred to the unit (central nursing services or central nursing office); and 8253 was the classification code (psychiatric technician). The final number -- 0004 -- referred to the specific position within the unit.

changing the number of Gallegos's position from an eliminated position to an alternate "8253" (psychiatric technician) position in another unit of MSH ("202" instead of "240").  According to appellant, a "reasonable inference" could be drawn that Trinidad and Griffis had "the option of keeping one or both of the psych techs" if they could find "funded positions in other departments" and that "if [appellant] had not been injured, they would have found a position . . . for him, just as they did for . . . Gallegos."

Respondents' SOF had acknowledged that since early October 2010, Gallegos had been working as a forensic court escort in the central staffing office on an as-needed basis.  While representing that Gallegos (and Rowley) had been ranked higher than appellant prior to appellant's injury, respondents did not state that Gallegos had been given the alternate position because of his ranking.  These facts were irrelevant to the original motion, as respondents sought to prove only a legitimate nondiscriminatory reason for withdrawing appellant's offer -- namely, the elimination of the position.  In opposition, appellant introduced evidence to raise a dispute that Gallegos was higher ranked and contended these discrepancies raised an issue whether Gallegos "was the one whose offer should have been withdrawn."[6]

Appellant raised an alternative ground for denying the motion.  He stated in a declaration submitted in support of his position that when he notified Trinidad of

---

[6]     Appellant's evidence established that appellant ranked highest in the interviews, and that the reference check preceding the extension of the offer to Gallegos was conducted before any reference check for appellant.  While this evidence established a dispute as to the actual pre-offer rankings of the candidates, it is immaterial.  There is no dispute that a job offer was extended to appellant.  Moreover, as will be seen, the position offered Gallegos also was eliminated.  He was able to assume the forensic court escort job because he had been classified as a psychiatric technician for some time and could be transferred to an alternate position in the same classification without affecting the mandated reductions.

7

his injury and limited duty status, she asked if he went out on limited duty a lot, whether this was going to be a problem, and whether she should hire someone else for the position.[7]  Appellant contended that these remarks were sufficient, standing alone, to raise an issue of fact that discriminatory animus was behind the decision to choose between him and Gallegos, despite respondents arguably having presented a facially valid reason for selecting Gallegos to assume the alternate forensic court escort position.

### D.  *Respondents' Reply*

In their reply, respondents conceded that reference checks may not have been completed before the candidates were called about their interest in the position, but contended that discriminatory animus could not be inferred from deviations in the hiring and candidate ranking process that occurred before October 5.  Respondents asserted that because the decision to eliminate the position and any ranking of the applicants occurred before appellant's injury, there could be no discriminatory animus.

Respondents objected to the portion of appellant's declaration in which he related the comments made by Trinidad after he informed her of his injury and limited duty status as "hearsay."  Respondents raised the same objection to the portion of appellant's deposition in which the same comments were described.

### E.  *First Hearing*

At the initial hearing on the motion for summary judgment, the discussion focused on Gallegos's 5408 form and who had made the decision to place him into

---

[7]     Appellant also testified to Trinidad's statements in his deposition.  In her deposition, Trinidad confirmed telling appellant:  "'I just hired you.  Are you telling me you're on limited duty?'" or words to that effect.

8

an alternate forensic court escort position. The court concluded there was an unresolved issue of fact whether Trinidad had been involved in the decision to assign Gallegos to that position. The court inquired why these matters had not been resolved in discovery. Counsel for appellant explained that the form had been produced late, after the witness depositions had been completed and approximately one week before opposition to the motion was due. The court continued the hearing to permit appellant's counsel to conduct additional discovery to determine who was involved in preparing the 5408 form and the decision to place Gallegos, rather than appellant, in the alternate forensic court escort position. The court also set a supplemental briefing schedule.

F. *Supplemental Briefing*

In his supplemental briefing, appellant presented evidence that Trinidad had informed Griffis of appellant's injury. To support his claim that Trinidad and/or Griffis played a role in the decision to assign Gallegos, rather than appellant, to the alternate forensic court escort position after learning of appellant's injury, appellant presented the following evidence: (1) Griffis's testimony at her original deposition that she and Trinidad were responsible for deciding whom to hire and which of the three top candidates they preferred (referring to the initial interview stage); (2) Trinidad's testimony at her original deposition that she learned from Griffis that a forensic court escort position was going to be cut and "we were only going to be able to hire one"; (3) Trinidad's testimony at her supplemental deposition responding affirmatively to the question "[w]hen you and . . . Griffis had your conversation and she told you you were only going to have one forensic court escort, at that time you had to choose either [Gallegos] or [appellant]; correct?"; and (4) Park's testimony at his supplemental deposition that he was

9

unaware of anyone other than appellant who had been offered a position at MSH and had it withdrawn due to the reduction.

In respondents' supplemental brief, they asserted that the contention Trinidad and Griffis played a role in the decision to keep Gallegos after appellant's injury was "mistaken and unfounded." They presented evidence that Baskette, acting alone, was responsible for assigning Gallegos to the alternate forensic court escort position, and that she approved his transfer despite the reduction because Gallegos was already working as a psychiatric technician in another unit, and his transfer would not affect the reduction in psychiatric technician positions or the budget.[8] Evidence presented by respondents demonstrated that Trinidad filled out Gallegos's 5408 form on September 24, 2010, passed it on to human resources, and never saw it again. After it was logged in by the human resources department, it went to Baskette to provide a position number. Baskette assigned the 202 number because she knew all the unit 240 psychiatric technician positions -- the positions for which appellant and Gallegos had interviewed -- were being eliminated. She was able to do this for Gallegos because he was already a psychiatric technician and moving him was "a lateral transfer with no budgetary effect"; she could not have done the same for appellant. When she assigned the position number, which occurred on or before October 9, 2010, Baskette had no knowledge that appellant had injured his ankle, and had not spoken of him with Trinidad, Griffis or Park.

G. *Court's Order*

The court granted the motion for summary judgment, concluding that respondents had introduced "abundant evidence of a non-discriminatory reason for

---

[8] Evidence in the record indicated that Gallegos had been working as a psychiatric technician at MSH since 1992.

10

eliminating the [forensic court escort position] before [appellant] assumed [it]." The court found there was "no genuine dispute as to [respondents'] contention that Trinidad played no role in the elimination of positions and that the position [appellant] had been offered was actually eliminated prior to his October 8 phone call with Trinidad." In addition, the court found there was "no evidence that Gallegos filled one of the eliminated positions" or that "MHS'[s] handling of Gallegos'[s] position was improperly motivated." The court found that Baskette was responsible for assigning Gallegos to the alternate forensic court escort position, and that she was able to do so because Gallegos was already a psychiatric technician, and she could transfer his position to the central staffing office while still meeting the quota for psychiatric technician position eliminations. At the hearing, the court stated: "The evidence is that . . . Trinidad filled out the [5408] form [for Gallegos] and never saw it again. And that . . . Baskette alone in her office without consulting anybody figured out a way to finesse the job by transferring . . . Gallegos who was already a psych tech. She could not have done that for [appellant] because he was not a psych tech." The court found "no evidence . . . that when [Baskette] made that decision to transfer Gallegos, [she] knew anything about [appellant's] injury (or about his EEO gender discrimination claim)."

The court specifically addressed the items of evidence submitted by appellant to support his claim that Trinidad or Griffis was involved in the decision to place Gallegos into the alternate forensic court escort position. The court concluded that "[n]one of this testimony raises a triable issue of fact as to alleged discriminatory animus," and that the testimony was "consistent with Baskette's testimony that she, alone, made the decision to transfer Gallegos' entire position while eliminating the two advertis[ed] positions."

11

The court sustained respondents' objection to statements by Trinidad to appellant after he informed her of his injury and limited duty status. Nevertheless, the court addressed the evidence, finding that Trinidad's comments did not evidence "actionable anti-disability animus": "While . . . Trinidad's questions -- whether [appellant] went out on limited duty a lot and if this was going to be a problem -- may not have been tactfully stated, they were nevertheless legitimate questions. It is undisputed that [appellant's] response -- that his injury was not going to be a problem -- satisfied Trinidad because she took no action to withdraw his offer of employment. Her statement that she was thinking about calling the next person on the list if there was a problem is not evidence of anti-discriminatory [animus]."[9] Judgment was entered. This appeal timely followed.

## DISCUSSION

A. *Standard of Review*

On appeal after a motion for summary judgment has been granted, we review the decision de novo, and independently determine whether the record supports the trial court's conclusion that the plaintiff's claims failed as a matter of law. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*); *Scotch v. Art Institute of California-Orange County, Inc.* (2009) 173 Cal.App.4th 986, 1003.) We consider all the evidence set forth in the moving and opposition papers, except

---

[9] The court's order also stated that appellant had "not established that temporary work restrictions for a sprained ankle constitute[] a 'disability' for purposes of FEHA" and that there was no evidence in the record that "anyone at MHS regarded [appellant] as 'disabled.'" At the hearing, counsel for appellant pointed out that respondents had not sought summary judgment based on the absence of a disability and asserted that appellant could have presented evidence to demonstrate that he had an actual or perceived disability. The court acknowledged that the argument had not been made by respondents and referred to that portion of its order as "dicta." Respondents do not rely on this portion of the court's ruling on appeal. Nor do we.

that to which objections have been made and properly sustained. (*Guz*, *supra*, at p. 334; *Hennigan v. White* (2011) 199 Cal.App.4th 395, 401; *Snatchko v. Westfield LLC* (2010) 187 Cal.App.4th 469, 476.) Where the defendant is the moving party, we determine with respect to each cause of action whether the defendant has conclusively negated a necessary element of the plaintiff's case or has demonstrated that there is a complete defense to the plaintiff's causes of action and that under no hypothesis is there a material issue of fact requiring the process of trial. (*Guz*, *supra*, at p. 334; *DeJung v. Superior Court* (2008) 169 Cal.App.4th 533, 549.)

B. *Appellant's FEHA Discrimination Claim*

   1. *Respondents Refuted Appellant's Prima Facie Case of Discrimination*

Under FEHA, it is unlawful for an employer to refuse to hire or employ a person "because of . . . physical disability, mental disability, [or] medical condition . . . ." (Govt. Code, § 12940, subd. (a).) To establish a FEHA discrimination claim, the plaintiff must establish "a causal link between the employer's consideration of a protected characteristic and the action taken by the employer." (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 215.) Because direct evidence of discriminatory motive is difficult to come by, such claims are usually proven circumstantially, allowing the trier of fact to infer discriminatory animus "from facts that create a reasonable likelihood of bias and are not satisfactorily explained." (*Guz*, *supra*, 24 Cal.4th at p. 354.) A plaintiff establishes a prima facie case of discrimination by proving that "(1) he [or she] was a member of a protected class, (2) he [or she] was qualified for the position . . . sought or was performing competently in the position . . . held, (3) he [or she] suffered an adverse employment action, such as termination, demotion, or denial of an available job,

13

and (4) some other circumstance suggests discriminatory motive." (*Guz*, *supra*, at p. 355.) Once the plaintiff establishes a prima facie case, a presumption of discrimination arises, shifting to the employer the burden of rebutting the presumption by producing admissible evidence that its action was taken for a legitimate, nondiscriminatory reason. (*Id*. at pp. 355-356.)[10]

The burden placed on the employer by the *McDonnell Douglas* test does not preclude summary judgment. Employers moving for summary judgment on a FEHA discrimination claim commonly seek to demonstrate that the plaintiff cannot establish one of the elements of the prima facie case or that there is no disputed issue of material fact regarding the motivation behind the adverse employment decision. (*Caldwell v. Paramount Unified School Dist*. (1995) 41 Cal.App.4th 189, 202.) "If the employer presents admissible evidence either that one or more of plaintiff's prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors, the employer will be entitled to summary judgment unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing." (*Id*. at p. 203; accord, *Avila v. Cont'l Airlines, Inc*. (2008) 165 Cal.App.4th 1237, 1247.)

Here, the undisputed facts established a legitimate, nondiscriminatory reason for MHS's failure to hire or promote appellant to the forensic court escort position, namely, the elimination of the position. The evidence established that in September 2010, MSH had two vacant forensic court escort positions in unit 240, and that although Trinidad and Griffis believed they were authorized to fill the positions, a process had already been set in motion to eliminate both positions. In

---

[10]     Because this burden shifting procedure was first set forth in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, it is generally referred to as the "*McDonnell Douglas* test." (*Guz*, *supra*, 24 Cal.4th at p. 354.)

January 2010, California's budget crisis led the Governor to issue an executive order directing all state agencies to institute a five percent salary savings, thus requiring agencies to eliminate rather than fill vacant positions. Baskette completed the vacancy drill identifying MSH's vacant positions in August 2010 and one month later was directed to eliminate a specific number of psychiatric technician and trainee positions. She selected the positions to be eliminated, including the one offered to appellant, and finalized the list on October 4, one day before appellant was injured and four days before he reported his injury to Trinidad. Thus, there can be no dispute that the forensic court escort position appellant was selected to fill was eliminated by a legitimate budgeting process that had no connection to discrimination based on disability.

Appellant presented no evidence to counter respondents' explanation of the process that led to the elimination of the forensic court escort position offered him. Rather, he focused on the fact that Gallegos had been moved to an alternate forensic court escort position. Appellant contended that he, rather than Gallegos, could have been placed in that position, or that a similar position could have been created for appellant, and that MSH's failure to do so was evidence from which a reasonable trier of fact could infer discrimination.

When an employer reduces its work force for economic reasons it generally incurs no duty to transfer employees, even those who fall into a category protected by FEHA. (*Gibbs v. Consolidated Services* (2003) 111 Cal.App.4th 794, 800.) However, if the employer voluntarily assumes such an obligation, an inference of discrimination may arise if the plaintiff "'"can show that others not in the protected class were treated more favorably." [Citation.]'" (*Ibid*.) But even where another employee was treated more favorably, the plaintiff is not relieved of the obligation to show that "'an illegitimate criterion'" was "'a substantial factor in the particular

15

employment decision'" or a "motivating factor behind [it]." (*Harris v. City of Santa Monica*, *supra*, 56 Cal.4th at pp. 231-232.)

In conjunction with the supplemental briefing, the parties presented deposition testimony in which Baskette testified that she alone was responsible for placing Gallegos in the alternate forensic court escort position. Baskette stated that the 5408 form came across her desk on or before October 9. Acting on her own initiative, she determined there would be no obstacle to continuing Gallegos in the forensic court escort position he had begun on October 7 because he was already classified a psychiatric technician, and transferring him from his former unit to the central staffing office unit would not affect the total number of psychiatric technician positions eliminated at MSH. Accordingly, she approved the transfer after assigning the position a new number. There was no evidence that she discussed her decision with anyone, including Trinidad or Griffis. There was no evidence that when she made the decision, she was aware of appellant's October 5 injury and limited duty status.

Appellant did not dispute that Gallegos was classified a psychiatric technician in his former position and that this distinguished him from appellant, who was an automotive equipment operator. Nor did he dispute that Gallegos had begun working in his new forensic escort position the day before appellant reported his injury to Trinidad. Appellant presented no evidence to counter Baskette's testimony that she consulted with no one aware of appellant's injury prior to completing the paperwork that permitted Gallegos to remain in the forensic court escort position. Appellant presented no evidence that Baskette was aware of his injury or limited duty status when she processed Gallegos's paperwork. In short, appellant presented no evidence that the decision to allow Gallegos to transfer from one psychiatric technician position to another was made by anyone with any awareness of appellant's injury.

16

Appellant's attempt to raise a triable issue of fact by referring to Trinidad's and Griffis's deposition testimony is unavailing. At best, their testimony establishes that they had input into the initial decision to hire appellant and Gallegos, and that Trinidad at some point believed she and/or Griffis would have to decide between Gallegos and appellant. The trial court found, however, and the record supports, that once Trinidad and Griffis extended offers to appellant and Gallegos for positions they believed were available to be filled, they had no further input. The decision to eliminate the vacant positions was made by Baskette before appellant was scheduled to start and before he was injured. Similarly, Baskette's decision to transfer Gallegos was based on the fact that he was already working as a psychiatric technician in a different unit and had held that classification for years. On this record, there is no triable issue that anyone with discriminatory animus against appellant, or even knowledge of his injury, was involved in the decision to approve Gallegos's transfer. Accordingly, the record admits of no rational inference that Gallegos received preferential treatment because of appellant's injury.

## 2. *Appellant Presented No Direct Evidence of Discrimination*

Appellant contends that the remarks made by Trinidad when he reported his injury and limited duty status constituted "direct evidence" of discrimination and precluded the grant of summary judgment.[11] "Direct evidence is evidence which,

---

[11] The court sustained respondents' hearsay objection to Trinidad's remarks. As appellant asserts in his brief, the statements were not hearsay because they were evidence of Trinidad's state of mind. (Evid. Code, § 1250; see *Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1113-1114 [burden is on proponent of evidence to challenge trial court's evidentiary rulings in brief on appeal].) Moreover, the same evidence was submitted by respondents, who included in their moving papers the portion of appellant's deposition in which he recounted his conversation with Trinidad.

17

if believed, proves the fact of discriminatory animus without inference or presumption." (*DeJung v. Superior Court, supra,* 169 Cal.App.4th at p. 550 [evidence that plaintiff was told hiring committee was looking for "'someone younger'" was direct proof of age discrimination]; see *Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1144-1145,1147, quoting *Kennedy v. Schoenberg, Fisher & Newman, Ltd*. (7th Cir. 1998) 140 F.3d 716, 723 ["'Direct evidence of discriminatory intent in pregnancy discrimination cases generally is in the form of an admission by a supervisor or decision maker that the employee was suspended because she was pregnant.'"].) Where the plaintiff presents direct evidence of discriminatory motivation behind the adverse employment decision, there is no need to establish a prima facie case under the *McDonnell Douglas* test or rely on inferences and presumptions. (*DeJung v. Superior Court*, *supra,* at p. 551; accord, *Trop v. Sony Pictures Entertainment, Inc.*, *supra,* 129 Cal.App.4th at pp. 1144-1145.) "'[T]he shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the "plaintiff [has] his day in court *despite* the unavailability of direct evidence." [Citation.]'" (*DeJung v. Superior Court*, *supra*, at p. 550, quoting *Trans World Airlines, Inc. v. Thurston* (1985) 469 U.S. 111, 121.)

Where a plaintiff offers direct evidence of discrimination, "the defendant can avoid liability only by proving the plaintiff would have been subjected to the same employment decision without reference to the unlawful factor." (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67-68; accord, *Trop v. Sony Pictures Entertainment, Inc.*, *supra*, 129 Cal.App.4th at p. 1145.) However, to avoid summary judgment based on a statement purportedly exhibiting discriminatory intent, there must be evidence of a causal relationship between the animus and the adverse employment action, as for example, by a showing that "a significant participant in an employment decision exhibited discriminatory animus

18

. . . ." (*DeJung v. Superior Court*, *supra*, 169 Cal.App.4th at p. 551.) Here, there was none. However Trinidad's remarks are construed, there is nothing to suggest that after learning of appellant's injury she took any action that precipitated the withdrawal of appellant's offer of employment as a forensic court escort. By appellant's own admission, MSH sought to ensure he was medically fit for the position and offered to accommodate him by delaying his start date. More important, respondents established through uncontested facts that Trinidad had no part in the decision to eliminate any of the forensic court escort positions -- which had been finalized days earlier -- and no input into Baskette's decision to transfer Gallegos from his former unit to the central staffing office unit, thereby allowing him to assume the duties of the position despite the reductions.

"'[S]tatements by nondecisionmakers'" cannot establish "that improper bias was a motivating factor behind a particular employment decision." (*Harris v. City of Santa Monica*, *supra*, 56 Cal.4th at p. 231.) "[S]ection 12940(a) [of FEHA] does not purport to outlaw discriminatory thoughts, beliefs, or stray remarks that are unconnected to employment decisionmaking. Racist, sexist, or other biased comments in the workplace may give rise to a claim for unlawful harassment under a separate provision of the FEHA. [Citations.] But such comments alone do not support a claim under section 12940(a), nor do bigoted thoughts or beliefs by themselves. Were it otherwise, the causation requirement in section 12940(a) would be eviscerated. Section 12940(a) does not prohibit discrimination 'in the air.' It prohibits discrimination that causes an employer 'to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.'" (*Ibid.*, quoting Govt. Code, § 12940, subd. (a).) Appellant failed to establish a causal

connection between Trinidad's comments and the decision to eliminate the positions for which he interviewed or the decision to transfer Gallegos from his former psychiatric technician position to his current one. Accordingly, respondents were not required to meet a higher standard to attain summary judgment.

### 3. *Insignificant Discrepancies in Respondents' Explanation for Withdrawing the Job Offer Did Not Establish Pretext*

Where, as here, the defendant moving for summary judgment produces evidence of a legitimate, nondiscriminatory reason for the adverse employment action, "the burden shifts to the plaintiff to prove intentional discrimination. [Citation.]" (*Batarse v. Service Employees Internat. Union, Local 1000* (2012) 209 Cal.App.4th 820, 834 (*Batarse*).) "The plaintiff must ""offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination."" [Citation.]'" (*Ibid*., quoting *Morgan v. Regents of University of California, supra,* 88 Cal.App.4th at p. 75.) To do this, the plaintiff may """""demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' [citation], and hence infer 'that the employer did not act for the [. . . asserted] non-discriminatory reasons.' [Citations.]" [Citations.]' [Citation.]""" (*Batarse*, *supra*, at p. 834, italics deleted, quoting *Morgan v. Regents of University of California*, *supra*, at p. 75.) "'Circumstantial evidence of "'pretense' must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate" on an improper

20

basis.  [Citations.]'" (*Batarse*, *supra,* at p. 834, quoting *Morgan v. Regents of University of California*, *supra*, at pp. 68-69.)

"[E]ven if pretext is shown, 'an inference of intentional discrimination cannot be drawn solely from evidence, if any, that the [employer] lied about its reasons.  The pertinent statutes do not prohibit lying, they prohibit discrimination. [Citation.]  Proof that the employer's proffered reasons are unworthy of credence may "considerably assist" a circumstantial case of discrimination, because it suggests the employer had cause to hide its true reasons.  [Citation.]  Still, there must be evidence supporting a rational inference that intentional discrimination, on grounds prohibited by the statute, was the true cause of the employer's actions. [Citation.]'" (*Slatkin v. University of Redlands* (2001) 88 Cal.App.4th 1147, 1157, italics deleted, quoting *Guz*, *supra*, 24 Cal.4th at pp. 360-361.)

Appellant contends respondents offered "shifting explanations" as to why his offer was withdrawn, thus establishing pretext.  We disagree.  Respondents' initial moving papers established that the position offered to appellant had been eliminated -- along with all vacant psychiatric technician positions at MSH -- as the result of mandated budget cuts.  In his opposition, appellant asserted, based on the late-produced 5408 form documenting Gallegos's transfer, that Gallegos had been given favorable treatment by being placed in an alternate forensic court escort position.  After the court ordered additional briefing, respondents presented more detailed evidence, establishing that it was Baskette alone who made the decision authorizing Gallegos's transfer to the forensic court escort position he had begun October 7.  There was no significant discrepancy.  Until the first hearing on the motion, respondents were not called on to explain Baskette's role.  In any event, the undisputed evidence established that without any knowledge of appellant's injury, Baskette authorized Gallegos's transfer, and that she could do so within the constraints mandated by the budget cuts because Gallegos (unlike appellant) was

21

already classified as a psychiatric technician.  Any discrepancies identified by appellant do not """"""demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence . . . .'""""""

C. *Appellant's Remaining Claims*

Appellant also asserted claims for failure to engage in the interactive process, failure to reasonably accommodate a physical disability, and failure to take reasonable and appropriate steps to prevent, investigate and correct discrimination and retaliation.[12]  Each of these claims is dependent on the existence of an open forensic court escort position at MSH into which appellant could have been slotted.  As the undisputed evidence established that no such position existed due to the reductions, summary judgment on the remaining claims was appropriate.

---

[12]     No issues pertaining to appellant's claim of retaliation for filing the 2010 EEO complaint were raised in the brief.

22

# DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:



EPSTEIN, P. J.



EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.